RUSSEL GOLGERT, GUARDIAN, APPELLANT, v. HOWARD W. SMIDT ET AL., APPELLEES.
250 N. W. 2d 628

Filed February 16, 1977.   No. 40805.

Conway & Connolly and Stephen G. Lowe, for appellant.

Dunmire & Blessing, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

NEWTON, J.

This is an action to set aside two deeds each conveying a 160-acre tract of land to the defendants. Walter Golgert died March 31, 1967. Walter and his wife Alice held all their property in joint tenancy. Except for some accumulation during the marriage, it had all been derived from Alice' side of the family. Alice conveyed two tracts of land to the defendants Marjorie and Howard Smidt who were, and had been for several years, farm tenants of the Golgerts. Plaintiff charges that these conveyances were the result of undue influence. The District Court entered judgment for the defendants. We affirm that judgment.

Alice Golgert had no blood relatives living except the Korgans who appear to be second cousins. There were some nephews and nieces by marriage including Russel Golgert who brings this action as her guardian.

The evidence indicates that Alice was grief stricken after her husband's death; she spoke of him as though he were still living and would get lost when driving. In February or March 1969, she had a stroke, spent some time in a hospital and a rest home, but eventually she returned to her own home for about 3 years. In February 1973, she had deteriorated physically and mentally to the point where she was placed in a state hospital and a guardian appointed for her. At this time she had about $67,000 in bonds and certificates of deposit, $20,000 in a checking account, her home, and 240 acres of farmland. She had previously conveyed 320 acres to the defendants and 80 acres to Claire Halloran, a friend.

About 60 days after her husband's death Alice consulted Joseph Helmann, a lawyer, about making a will. In all, she executed four wills which will be referred to by number in the sequence in which they were exe-

cuted. Will No. 1, executed about June 1, 1967, left $5,000 to a cemetery association; 80 acres to Claire Halloran; 80 acres each to Raymond Korgan, Carolyn Korgan, and Glen Korgan; directed the sale of her remaining real estate and the distribution of the proceeds to 10 of the Golgerts, to Van Derhoff, and to Harold Korgan in equal shares. The residue was left one-half to the defendants and one-half to Raymond, Carolyn, and Glen Korgan. On June 16, 1967, she executed will No. 2. This will was practically identical with the first except that she left 320 acres, the land in question, to the defendants and named the 10 Golgerts as residuary legatees. Howard Smidt took her to see Helmann on every occasion and in this instance Helmann talked to Alice privately. Alice told Helmann she was completely dependent on the Smidts, had to do something for them, and that "this is the way we want to get it done." Helmann testified that she had testamentary capacity but thought she was easily influenced and that Smidt had exercised such influence as to will No. 2. On July 25, 1967, Alice made an appointment with Helmann and will No. 3 was executed. She did not seem to understand the meaning of a codicil and one was not made. This will was practically the same as No. 2 except she gave one-half of her household furniture and personal effects to Howard Smidt and one-half to Russel Golgert.

Mr. Helmann further stated that following her husband's death Alice had about $68,000 in bonds, $29,000 in certificates of deposit, and a checking account of $9,195.71 in addition to the real estate heretofore mentioned. Under will No. 1 defendants were to receive about $49,000 in cash, under will No. 2, real estate valued at $138,600, and under will No. 3, the real estate referred to plus the one-half of the furniture and personal effects. Alice had testamentary capacity when all three wills were made; she knew what was going on; and the wills were as she wanted them.

In the fall of 1967 Alice consulted attorney William G. Cambridge. She said she was dissatisfied with her will, wanted a new one prepared, and did not want to go back to Helmann because he had been named executor in the three previous wills and she wanted that changed. She also said she had heard of wills being broken and wanted to be sure the Smidts got the land devised to them. Cambridge explained all requirements to break a will, including undue influence, and she denied she was subject to undue influence. She stated she had no blood relatives closer than cousins; she explained her relationship to the Korgans and Golgerts, that Hallorans were not related; she said the property came from her side of the family; and she went through will No. 3 with Cambridge item by item and explained the changes she desired. She was also concerned about estate taxes. Cambridge explained the tax consequences of a will, a trust, a gift of the land to defendants, and a gift with a provision for an annuity. She wanted something from the property while she lived and decided to give the 320 acres to defendants by deed and take an annuity in return, one deed to be executed in 1967 and the other in 1968 to increase the gift-tax exemption from $6,000 to $12,000.

Alice listed all her property consisting of 640 acres of land, $36,000 in bonds, $28,000 in certificates of deposit, and her home. She had been receiving about $5,000 in annual rent from the land to be given the Smidts and decided that should be the amount to be paid during her lifetime under the annuity agreement. Mortgages were to be taken to secure the annuity. After several conferences will No. 4, the deeds, mortgages, and annuity agreement were prepared and executed. Will No. 4 left all personal and household effects, including jewelry, clothing, automobiles, furniture, furnishings, silver, books, and pictures to Erna Golgert and Marjorie A. Smidt in equal shares. She reduced the cemetery association bequest to $3,500, continued the devises

to Claire Halloran and Raymond, Carolyn, and Glen Korgan, devised 160 acres to defendants (the other 160 acres had then been deeded), and devised the residuary estate in equal shares to Russel Golgert, Lois Golgert Van Derhoff, Claire Halloran, Marjorie Smidt, and Harold, Raymond, Carolyn, and Glen Korgan, and directed payment of inheritance and estate taxes out of the residuary estate. Howard Smidt was named executor. Each of the four wills also provided for devises and bequests over in the event any of the named beneficiaries predeceased the testator.

The record also indicates that at times Alice made cash gifts to Howard Smidt and had a joint account with him from which he was to pay her share of farm expenses. He had been a tenant of Alice and her husband since 1945 and she gave him a 10-year-crop-share lease. There are numerous letters in the record written by Alice to the Smidts through 1970 and 1971 which clearly show her close relationship to the Smidts, occasional calls on them for assistance, and her love and respect for them. The letters show a realization that her husband was deceased and do not indicate an uncertain or bewildered mind.

A friend who frequently drove Alice out to the farm stated that on one occasion he commented that one 80-acre tract laid nice and she said that was to go to Claire Holloran and if he would take her downtown, she would have the deed fixed up. They went to the office of Jerry Whelan, a lawyer, and the deed was prepared and delivered. Thus Claire Halloran obtained the land devised to her in each of the four wills.

Attorney Cambridge testified he had never done any work for defendants but that Howard Smidt was present when the annuity agreement was discussed as it affected him. Cambridge sized up Alice Golgert as a strong-willed woman who knew her property and to whom she wanted to give it. She was not the sort of person to be pushed around but had a strong personality

and who fully understood his various explanations regarding taxes and the various methods he outlined for the disposition of her property.

It is apparent that the evidence is somewhat conflicting, but it is noted that the defendants are not the only ones to whom Alice deeded land and her choice of beneficiaries was quite stable except for some variance in the size and nature of the bequests. Also, she was fully aware of her relationship to the Korgans, the Golgerts, Claire Halloran, and the defendants. The defendants appear to have been closer to her, and more helpful, than any of the others. Her actions and her reasoning do not appear to have been abnormal or unusual. Is it unreasonable for one without any close kin to wish to reward a faithful tenant of 22 years standing?

Plaintiff charges that a confidential relationship existed between Alice Golgert and the defendants. Assuming this to be correct, it would mean that plaintiff established a prima facie case and although the burden of proof did not shift, the burden of going forward with the evidence to overcome a presumption of undue influence shifted to the defendants. See, Kucaba v. Kucaba, 146 Neb. 116, 18 N. W. 2d 645; Guill v. Wolpert, 191 Neb. 805, 218 N. W. 2d 224. To permit a finding of undue influence, it must appear by clear and satisfactory evidence that: (1) The grantor was subject to such influence; (2) the opportunity to exercise it existed; (3) there was a disposition to exercise it; and (4) the result appears to be the effect of such influence. The undue influence must be such as controls the will of the grantor. See Guill v. Wolpert, *supra.* The mere existence of a confidential relationship does not void a conveyance. As a general rule the conveyance is valid if it appears that the grantor had competent or disinterested advice or acted voluntarily, deliberately, and advisedly, with full knowledge of the nature and effect of her act, and not because the confidential relation-

ship influenced her. See Gaeth v. Newman, 188 Neb. 756, 199 N. W. 2d 396. A presumption of undue influence is not a presumption contemplated by section 27-301, R. R. S. 1943, and the burden of proof on the issue of undue influence remains on the contestant. See McGowan v. McGowan, *ante* p. 596, 250 N. W. 2d 234.

An action based on undue influence is an action in equity and is to be tried de novo on appeal. On a thorough review of the record we conclude that plaintiff has failed to sustain his burden of proof and that, on the contrary, the preponderance of the evidence favors the defendants. Alice had the able advise of two different attorneys. Both concede that she had testamentary capacity, knew what was going on, was cautioned in regard to undue influence, and that the wills were as she wanted them. Similar testimony was given by attorney Cambridge in regard to the deeds.

The judgment of the District Court is affirmed.

AFFIRMED.