JERRY E. ANDERSON, APPELLEE, V. SYLVIA M. CLAUSSEN
ET AL., APPELLANTS.

262 N. W. 2d 438

Filed February 15, 1978.   No. 41207.

Fraser, Stryker, Veach, Vaughn, Meusey, Olson & Boyer, for appellants.

Thomas P. Leary and Robert G. Grove, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

McCOWN, J.

The plaintiff, Jerry E. Anderson, brought this action in equity to set aside a deed to a tract of land in Douglas County, Nebraska.   The District Court

found that the grantor was incompetent to execute the deed, and that the grantee of the deed, defendant Sylvia M. Claussen, had exerted undue influence on the grantor. The District Court canceled and set aside the deed, together with a subsequent deed from the grantee defendant to herself and her husband. The defendants have appealed.

Nellie Dillon Anderson was born August 13, 1881. She married Alfred M. Anderson in 1902 and they had two children, a son, Sidney, and a daughter, Sylvia. The family lived on a farm owned by Nellie located northwest of Omaha, Nebraska. That farm is the tract described in the deed involved here. In 1934 Sidney married and had a son, Jerry, the plaintiff in this action. Sylvia was married to Erwin J. D. Claussen, and they are the defendants in this action. Nellie and her husband, Alfred, continued to live on the farm. On August 5, 1943, Nellie Anderson executed a will in which she left her property to Sidney and Sylvia equally, or to their children if either of them predeceased her. This will was ultimately admitted to probate after a will contest between the parties involved in this case. A 1969 will executed by Nellie was declared invalid for lack of testamentary competency and undue influence. See Anderson v. Claussen, 196 Neb. 787, 246 N. W. 2d 586.

In February 1960, Nellie's husband, Alfred, died. Following the death of her husband Nellie's mental and physical health began to deteriorate. She became disoriented and suffered from delusions. On May 16, 1960, she was admitted to the hospital. Dr. Robert Wigton, a psychiatrist and neurologist, diagnosed and treated her illness as an involutional depression resulting from organic brain syndrome, or cerebral arteriosclerosis and senile degenerative changes. Nellie was released from the hospital on June 2, 1960, but returned to the hospital on August 21, 1960, when her delusions and depression re-

curred. She again received treatment, improved significantly, and then returned home.

In the meantime guardianship proceedings were instituted, and on June 1, 1960, after notice and hearing, the county court of Douglas County found Nellie to be incompetent and appointed her son, Sidney Anderson, guardian of her person and estate.

During the years between 1960 and 1964 Nellie lived alone on her farm and took care of herself. Both Sidney and Sylvia, and their families, visited her and helped care for her by running errands and doing various small chores. On November 3, 1964, Nellie attempted to have her guardianship terminated, and filed an application with the Douglas County court. Hearing was set but never held since Nellie returned to the hospital later in November 1964.

Dr. Wigton again treated Nellie for the same problems as before. He testified that her arteriosclerosis was becoming progressively worse and that it was essentially an irreversible illness producing a degenerative change which affects memory, judgment, clarity of thinking, and intelligence. Dr. Wigton recommended nursing home care for Nellie when hospital treatment was completed.

On December 29, 1964, Nellie left the hospital and was placed in Florence Heights Nursing Center. She was examined there on January 23, 1965, by Dr. William F. Giles, a neuropsychiatrist. Dr. Giles interviewed and tested Nellie and determined that she was suffering from "chronic brain syndrome due either to moderate arteriosclerotic changes or early senility."

On July 9, 1965, Nellie's attorney sought and obtained an order authorizing another physical examination to determine whether the guardianship might be terminated. Dr. Giles examined Nellie again on July 14, 1965. He determined she was not competent to manage her own affairs and that it

would be necessary to continue a guardianship. On July 16, 1965, Dr. Wigton also examined Nellie. He confirmed his former diagnosis and determined that her ability to care for herself or her business affairs was significantly impaired. Following the examinations Nellie remained in the nursing home and Sidney continued to act as her guardian until he died on March 7, 1969. Sidney was survived by his son, Jerry Anderson, the plaintiff here. On April 4, 1969, Sylvia was appointed special guardian for Nellie, and on May 12, 1969, Sylvia was appointed successor guardian of the person and estate of Nellie.

On August 11, 1969, Sylvia removed Nellie from the nursing home and took her to Nellie's farm home. Sylvia also arranged to have a companion live with Nellie and take care of her. On September 22, 1969, without notice to any other parties, Sylvia filed a final report as guardian and moved to have the guardianship terminated. She was discharged as guardian on the same day.

On October 9, 1969, Nellie executed a new will which left the bulk of her estate to Sylvia. It was this will which was later invalidated in the prior action between the parties. See Anderson v. Claussen, 196 Neb. 787, 246 N. W. 2d 586.

Nellie lived in her farm home for approximately 3 years. For about 6 months a companion-housekeeper lived with her. Thereafter she lived alone. Sylvia called her three times a day and took her anywhere she needed to go. Sylvia took care of all her financial affairs and bank accounts, and, at Nellie's request, transferred all Nellie's bank accounts to joint accounts with Sylvia.

In August 1972, at Nellie's request, Sylvia's husband, Erwin, retained an attorney and instructed him that Nellie wanted a deed drawn conveying Nellie's farm to Sylvia and Nellie as joint tenants with right of survivorship. The attorney never met Nellie but drafted the deed. Sylvia and her husband,

Erwin, took Nellie to the attorney's office, and a secretary brought the deed out to the car to be signed. While seated in the car Nellie executed the deed on August 16, 1972. The deed was recorded the following day.

Nellie entered a hospital on December 6, 1972, where she was treated for a stroke until December 17, 1972, when she was taken from the hospital to Fontenelle Boulevard Home. She remained at the home until September 17, 1973, when she was again admitted to the hospital. She died on September 20, 1973, at the age of 92. The autopsy report indicated the lumen artery had been reduced in size by approximately 50 percent due to arteriosclerosis.

The testimony of lay witnesses for the defendants was that in their opinions Nellie was of sound mind and knew the nature and extent of her property. The contacts about which they testified were generally during the period from August 1969 until August 1972. The medical witnesses for the defendants were Dr. R. D. Glover and his associate, Dr. Henry J. Quiring, general practitioners, who had treated Nellie routinely for her physical ailments since 1969. Neither of them tested Nellie for any mental problems. In their opinions Nellie was well oriented, understood who the members of her immediate family were, and knew the nature and extent of her property.

Plaintiff's witnesses generally contradicted defendants' witnesses in all respects. Lay witnesses testified Nellie was confused and suffered from delusions and a loss of memory. Nurses at the Florence Home testified that, in their opinions, Nellie was not competent at the time she was taken from the Florence Home in August 1969. Dr. Wigton and Dr. Giles, the neuropsychiatrists who had examined and treated Nellie from 1960 to 1969, testified. In answer to hypothetical questions based on their examinations, the prior and subsequent medical his-

tory, and the autopsy report, they testified that on August 16, 1972, in all probability Nellie's mental capacity and intellectual functioning would have been impaired to a significant degree, and that she would have been unable to know the nature, extent, and value of her property. Both testified that the arteriosclerosis was progressive and that her mental condition had probably deteriorated rather than improved since 1965.

The District Court specifically found that on August 16, 1972, Nellie Dillon Anderson was incompetent to execute a deed, and that Sylvia M. Claussen exerted undue influence on her mother. The District Court then canceled and set aside the deed of August 16, 1972, together with a subsequent deed from Sylvia M. Claussen to herself and her husband.

The defendants contend that the District Court erred in failing to give sufficient weight to the testimony as to mental capacity and competency at the time of execution of the deed. It is defendants' position that medical and other evidence of mental competence, at a time or times prior to August 16, 1972, ought to be discounted. The defendants also contend that the District Court erroneously applied the presumption of undue influence and shifted the burden of proof on that issue to the defendants improperly.

To set aside a deed on the ground of want of mental capacity on the part of the grantor, it must be clearly established that the mind of the grantor was so weak or unbalanced at the time of the execution of the deed that she could not understand and comprehend the purport and effect of what she was then doing. Westerdale v. Johnson, 191 Neb. 391, 215 N. W. 2d 102.

A prima facie case of undue influence is made out in case of a deed where it is shown by clear and satisfactory evidence (1) that the grantor was subject to such influence; (2) that the opportunity to exercise it existed; (3) that there was a disposition to ex-

ercise it; and (4) that the result appears to be the effect of such influence. Guill v. Wolpert, 191 Neb. 805, 218 N. W. 2d 224.

On both the issues of mental competency and undue influence the circumstances tend to support the contentions of the plaintiff. There can be no real doubt that the grantor was mentally incompetent for a period of several years. The medical evidence is persuasive that her condition was progressive and irreversible and would, in all probability, deteriorate rather than improve. The evidence of undue influence is equally persuasive. The weight of the evidence sustains the findings that the grantor was not competent at the time of execution of the deed, and that undue influence had been exerted on her. In an equity case where the evidence on material issues of fact is in conflict this court will consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. Von Seggern v. Von Seggern, 196 Neb. 545, 244 N. W. 2d 166.

Defendants' contention that the District Court erroneously applied the presumption of undue influence and shifted the burden of proof to the defendants is not supported by the record. The so-called "presumption of undue influence" is not a presumption within the ambit and meaning of section 27-301, R. R. S. 1943. In an undue influence case the burden of proof, or the risk of nonpersuasion on that issue, is on the plaintiff and remains there throughout the trial. See McGowan v. McGowan, 197 Neb. 596, 250 N. W. 2d 234. In an action based on undue influence, when a confidential relationship exists between the parties, and a prima facie case is established, the burden of proof remains on the plaintiff, but the burden of going forward with the evidence shifts to the defendants. Golgert v. Smidt, 197 Neb. 667, 250 N. W. 2d 628.

In the case before us the record indicates that the trial court determined that plaintiff's evidence established a prima facie case of undue influence, and that the burden of going forward with the evidence shifted to the defendants. The burden of proof, however, was placed on the plaintiff and remained there throughout the trial. The evidence supports the determinations of the District Court.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.