ROBERT BREZINA, APPELLANT, v. EVERETT J. HILL, AS
AGENT FOR THE HATTIE HILL ESTATE, ET AL.,
APPELLANTS, IMPLEADED WITH RICHARD GRUBAUGH
ET AL., APPELLEES.

277 N. W. 2d 224

Filed April 3, 1979. No. 41862.

Miles W. Johnston of Johnston, Grossman, Johnston, Barber, and Wherry, for appellant Brezina. Edward Asche and Edgar V. Thomas, for appellants Everett J. Hill et al.

William L. Walker and Earl Ludlam, for appellees.

Heard before SPENCER, Retired Justice, McCOWN, and BRODKEY, JJ., and REAGAN and BLUE, District Judges.

SPENCER, Retired Justice.

This action by Robert Brezina began as one for specific performance on a contract for the sale of land. Defendants are the property owners, who will

be referred to as the Hill heirs, and the real estate brokers with whom the property was listed, Grubaugh Bros. We sustained a judgment on the pleadings for the Hill heirs in the specific performance action. See Brezina v. Hill, 195 Neb. 481, 238 N. W. 2d 903 (1976).

After the entry of judgment on the mandate, the issues tried in this action were Brezina's cause of action against Grubaugh Bros. for damages and interest; the claim of Grubaugh Bros. against the Hill heirs for commission; and the cross-petition of the Hill heirs against Grubaugh Bros. for damages.

The trial was to the court which found Brezina had failed to sustain his burden of proof and dismissed his petition against Grubaugh Bros. The cross-petition of the Hill heirs was dismissed and judgment was entered against them in favor of Grubaugh Bros. in the amount of $4,050 and costs. Brezina and the Hill heirs prosecute this appeal. We affirm in part and reverse in part.

Before discussing the facts, we believe it may be helpful to an understanding of the issues on this appeal to briefly synopsize the original action which was for the specific performance of a contract for the sale of farmland in Butler County. A listing contract for the sale of the farm was entered into between Everett J. Hill, hereinafter referred to as Hill, and Grubaugh Bros. by Richard Grubaugh, hereinafter referred to as Grubaugh, on July 24, 1973. Hill signed it "Heirs of Hattie E. Hill, Everett J. Hill agent." The contract granted Grubaugh Bros. the exclusive right for a period of 1 year to sell the property for the sum of $110,000, for which they were to receive a 3 percent commission.

Grubaugh visited with prospective purchasers about the property and eventually accepted an agreement from Brezina for its purchase for the sum of $135,000. On September 20, 1973, Brezina signed an agreement for the purchase of the prop-

erty for the sum of $135,000, and paid Grubaugh the sum of $13,500 as a downpayment. The agreement was accepted by Grubaugh, who signed it "Everett Hill agent, by Dick Grubaugh broker." Grubaugh subsequently contacted Hill for his acceptance. Hill refused to sign the contract for the sale of property, essentially telling Grubaugh there were better offers. Grubaugh then signed the sales agreement as agent and filed his listing contract and the sales agreement with the register of deeds of Butler County, Nebraska.

Brezina filed his action for specific performance August 5, 1974, praying also for damages of $20,000 to compensate him for not being able to take possession of the farm on March 1, 1974, as called for in the contract. Grubaugh Bros. filed an answer and cross-complaint on August 26, 1974, in which they alleged they had performed their obligations under the listing contract and were entitled to a commission of $4,050 plus interest. On May 12, 1975, the District Court entered a judgment against Brezina on the pleadings, which this court affirmed.

On April 1, 1976, Grubaugh Bros. filed a motion for judgment on the mandate of the Supreme Court and a motion for summary judgment. Part of the summary judgment concerned the listing contract and the purchase agreement recorded October 3, 1973. Grubaugh Bros. requested that these contracts be stricken from the record of the register of deeds so as to remove any cloud which may have been cast upon the title to the real estate.

The District Court entered judgment on the mandate of July 7, 1976. It dismissed Brezina's petition with prejudice against all defendants except Grubaugh Bros. A motion for summary judgment against Brezina, filed by Grubaugh Bros., was overruled. The court ordered the listing contract and purchase agreement stricken from the records of the register of deeds. The only matters remaining

to be tried were Brezina's cause of action for damages against Grubaugh Bros., and the cross-complaint of Grubaugh Bros. against the property owners for their commission.

A further issue was added on September 22, 1977, when the District Court permitted the property owners to file an answer to the cross-complaint and to cross-petition for damages against Grubaugh Bros. in the amount of $16,210. The cross-petition alleged the Hill heirs had been required to expend the sum of $3,750 for attorneys' fees to obtain a dismissal of the action filed by Brezina and in clearing the title to the real estate. It was further alleged that they had sold the property to another buyer for the sum of $140,000 but because of litigation and the apparent cloud on the title, there was a delay in closing the sale. This delay, from March 1, 1975, to May 1976, allegedly resulted in a loss of $12,460, which figure represents the interest on the sum of $126,000, the purchase price less the 10 percent downpayment, at the rate of 8 percent.

Subsequently Brezina made an oral motion for leave to amend his petition to allege a cause of action for negligence and tortious interference of contract against Hill. This motion was denied. The court found the former judgment was res judicata to all matters raised and all matters that could have been raised. This ruling constitutes the principal assignment of error by Brezina. Brezina alleges this ruling deprived him of his right to put in issue the wrongful acts of defendant Hill, and the damages sustained by the plaintiff.

The trial court made the following findings: (1) All issues of damages raised or issues of damages that could have been raised as between plaintiff and defendant Hill have been finally decided in Brezina v. Hill, *supra*; (2) plaintiff failed to sustain his burden of proof with regard to damages suffered by reason of the wrongful acts of defendants Grubaugh;

(3) Everett J. Hill acted as agent for defendants Hill within the scope of his authority for said disclosed principals and entered into a valid and enforceable real estate contract with defendants Grubaugh; * * * (6) defendants Grubaugh thereafter acted in accordance with the terms and conditions of the real estate listing contract and secured a purchaser who was ready, willing, and able to purchase the property at a price of $135,000; (7) upon presentation of the offer to purchase to defendants Hill, the same was refused, thereby breaching the listing contract. Defendants Grubaugh Bros. are entitled to recover and are awarded judgment for a cash commission of 3 percent of the offer made by the plaintiff Brezina in the sum of $4,050, together with all court costs expended from and after February 26, 1976; and (8) defendants Hill incurred costs and attorneys' fees in this case, but there is no liability from defendants Grubaugh by reason that their damages were proximately caused by their breach of the real estate listing contract.

Plaintiff-appellant Brezina contests findings (1) and (2), while defendant-appellant property owners, the Hill heirs, contest findings (3), (6), (7), and (8). We believe the trial judge has misinterpreted the applicable law as applied to the facts in his findings (7) and (8). For an understanding of the issues involved, we believe it necessary to give a detailed recitation of additional facts.

Grubaugh testified Hill came to his office on July 24, 1973, and executed the listing contract. Grubaugh knew Hill was not the sole owner of the property, but he represented he was acting as agent for the other heirs. After Brezina signed the purchase agreement on September 20, 1973, Grubaugh contacted Hill for his acceptance. He met with Hill at Hill's place of employment on October 3, 1973.

A memo from Grubaugh to Hill, bearing the date "10-30-73," was received into evidence. It reads:

"Everett. When its convenient for you, you can sign papers on farm. Have it sold for 135,000⁰⁰. Sincerely. I can drive to Lincoln and see you at store if you prefer. Dick Grubaugh."

Grubaugh testified in his deposition and at trial that this memo was misdated, and he had actually written it and sent it on September 30, 1973. He had previously testified, however, at a hearing before the Nebraska Real Estate Commission that the date on the memo was correct. He stated at that hearing, which was conducted because of a complaint filed against him by Hill, that although he had already met with Hill on October 3, 1973, he wrote the memo because "I wanted something in writing I had notified him and he knew."

Grubaugh testified in his deposition that Hill refused to sign the contract for the sale of the property on October 3, 1973. Hill told him "I think I can get something better." Grubaugh testified that on this same day, following Hill's refusal, he "drove to David City and signed the purchase agreement as agent for Everett Hill and I filed the listing contract and the purchase agreement" with the Butler County register of deeds.

One of the first persons to contact Grubaugh about purchasing the property was Chester Guidinger, who eventually did buy the property together with Adolph Novacek for $140,000. Guidinger expressed an interest in the property on August 15, 1973. On August 20, 1973, Guidinger, his wife, and Mr. and Mrs. Novacek went to Grubaugh's home and offered to purchase the property for $129,000. They returned to Grubaugh's home on September 18, 1973, and increased the offer to $132,500. Before leaving, Novacek asked if Grubaugh would take $135,000. Grubaugh responded that he had to talk to someone else, but that he would get back to them. Grubaugh did not contact them again as he had promised.

Grubaugh testified he did not consider Guidinger

and Novacek as having made an offer of $135,000 because Novacek only asked "Would you take $135,000 for it tonight and sell it to us if we offered it to you?" Guidinger testified "before we left that night we told him that we would sign a contract for $135,000 if he would do it that night." Novacek's testimony is to the same effect.

Grubaugh testified he felt obligated to see another prospective purchaser, whom he intended to contact following an auction of a different farm the party was hoping to purchase. Grubaugh did contact this party on the morning of September 20, 1973. He then went to see Brezina, who was another prospect at the time. Brezina testified he saw Grubaugh on September 19, 1973, and was told about the other prospective purchaser who was awaiting the outcome of the auction. The next day Grubaugh came to his farm and told him he could buy the property for $135,000, which was "$2,500.00 more to $3,000.00 more, or somewhere, than the other parties were offering him * * *." Brezina had previously offered $127,000 or $128,000 on September 6, 1973.

At the hearing before the Nebraska Real Estate Commission, held on April 16, 1974, Hill testified Guidinger contacted him in the latter part of September 1973, and said he wanted to buy the property for $135,000. Hill referred him back to Grubaugh. He next received a carbon copy of a letter, dated October 30, 1973, which was sent to Grubaugh Bros. by Edward Asche, an attorney who had been contacted by Guidinger. The letter reads in part:

"Chester and Verna Guidinger have advised me they are having difficulty in communicating to you an offer they want to make for the lands belonging to the Hill estate * * *.

"Mr. and Mrs. Guidinger wish to communicate to the heirs of the Hill estate through you their offer of $140,000.00 for these lands * * *. Mr. and Mrs. Guidinger have indicated to me you have the ex-

clusive listing on this piece of land from the Hill heirs, and that it extends to June 1st of 1974 and for that reason this offer is being communicated to you. There has also been some contact made with Everett Hill relative to this offer for which reason a copy of this letter is being forwarded to Mr. Hill for his information.

"Mr. and Mrs. Guidinger would be willing to enter into a contract through your office for these lands at the above price and it appears that such a contract will be considered by those members of the Hill family that the Guidingers have contacted."

On the same day he received a copy of this letter, Hill received the memo from Grubaugh, also dated October 30, 1973. This was the first notice he had of the Brezina offer. A week or 10 days after he received a copy of the letter, Hill was contacted by Guidinger, who directly offered him $140,000. Hill attempted to contact Grubaugh but was unsuccessful. The first conversation Hill had with Grubaugh since listing the farm with him occurred sometime in December 1973. This was the conversation which took place at Hill's place of employment. At the meeting, Hill told Grubaugh he wanted to contact some of the other heirs to see if the Brezina offer would be acceptable. His next contact with Grubaugh was in February 1974.

Hill made several changes in his testimony when he gave his deposition on September 19, 1977. He agreed with Grubaugh that the correct date of Grubaugh's memo was September 30, 1973, and not October 30, 1973. Also, the meeting between Grubaugh and himself did occur on October 3, 1973. At this meeting he told Grubaugh he would have to telephone the other owners to see if the price of $135,000 was satisfactory. He received the call from Guidinger sometime around the 1st of October. Hill thought he knew about the Brezina offer when he received this call. Guidinger did not make an offer

but he explained he was having trouble contacting Grubaugh. He asked if it would be all right for him to see Edward Asche, who had done some work for the Hill family. Hill thought he saw Guidinger a few times during October, and the offer of $140,000 may have been communicated to him prior to the time he received the copy of the letter from Asche.

Guidinger testified he first called Hill on September 30, 1973, to inquire whether their offer to Grubaugh had been conveyed to Hill. Hill said it had not. Guidinger then went with his wife and Mr. and Mrs. Novacek to see Grubaugh on October 1, 1973. They were told the property had been sold. Guidinger again called Hill on October 2, 1973. Around October 15, 1973, he contacted Asche to make the offer of $140,000.

On February 12, 1974, one of the heirs, Mabel Fisher, wrote a letter to Grubaugh Bros. which reads in part:

"I learned that there are two firm bids for this farm, also that you have neglected to keep in touch with Mr. Hill. I would appreciate it if you would close the deal on the farm for one of the bids."

Grubaugh replied to this letter on February 23, 1974. His response reads in part as follows: "Yes, your brother Everett listed the farm with us on July 24th. On September the 20th I accepted a down payment and have in my possession a signed purchase agreement for the farm. Everett has three times refused to sign this purchase agreement. I saw him personally in October when I had the contracts with me and he refused to sign. Then I wrote to him two different times and he didn't acknowledge my letter. He also came to my home within this last month and refused to sign then also. After I had received this offer which I still have some people who had negotiated on the purchase of the farm but who did not offer enough money, since that time have offered a little more than what I had accepted. As far as I

was concerned I could not accept this but Everett thinks that he can." Hill testified the statements contained in the foregoing letter concerning his repeated refusals to sign were accurate.

Grubaugh also replied to Asche's letter. His letter in response, dated November 19, 1973, reads in part as follows: "In reply to your letter of October 30, 1973 with regards to an offer to purchase land belonging to the Hill heirs please be advised that an agreement to purchase said land has been entered into on the date of September 20, 1973. As you can easily see this offer comes 40 days after a previous offer has been accepted."

Brezina testified he telephoned Hill on September 26, 1973, to inform him he had purchased the property for $135,000. On September 30, 1973, Hill called him and asked, "Where the hell is Grubaugh?" Brezina asked if the deal was off, and Hill said it was. Brezina had several more conversations with Grubaugh and Hill. At one time he asked Grubaugh if he should offer Hill more money. Grubaugh advised him not to because he already had a binding contract. After learning of the Guidinger offer of $140,000, Brezina did offer Hill more money. On February 15, 1974, Brezina went to see Hill on the advice of his attorney to tender the balance of the purchase price before the closing date of March 1, 1974. It was at this time he learned from Hill that Grubaugh had signed the purchase agreement. Hill told him to wait until after the hearing before the Nebraska Real Estate Commission. Following the hearing, Brezina went to Hill and offered to beat Guidinger's offer. He offered Hill $190,000. Hill refused the offer, stating that Brezina was an S.O.B. and had not treated him right because of Grubaugh's signing of the contract. Brezina thereafter filed the action for specific performance.

Hill denied that Brezina ever made an offer of more than $135,000, and he could not recall any

meetings with Brezina. Grubaugh testified Brezina never talked about increasing his bid. Grubaugh admitted, however, he did have a conversation with Brezina in which he told Brezina the papers had been filed and as far as he was concerned Brezina had a contract.

The purchase agreement with Guidinger and Novacek was prepared on June 25, 1974, and was signed by the last of the heirs on August 5, 1974. The purchase price was $140,000. The contract called for a 10 percent downpayment, with the balance due at the time of closing, on March 1, 1975. Although the sale had not been closed, Guidinger and Novacek were given possession on March 1, 1975, because Hill's attorney was confident the cloud on the title would be removed. Closing was finally had on May 5, 1976, or about 2 months after this court affirmed the judgment on the pleadings.

We have set forth the evidence in great detail to show the conflict in the testimony of the witnesses. Some of the witnesses even testified differently as to the same facts on different occasions.

While this action was originally one for specific performance, that issue was settled in the first appeal. The trial court after the hearing on the mandate removed the cloud on the title. The continuation of the action was one for damages.

This started as an equitable action and although the previous case decided the equitable issue, the court retained jurisdiction for the purposes of a complete determination, and the parties tried the case to the court. In an equitable action where evidence on material issues of fact is in conflict, the reviewing court will consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. Anderson v. Claussen, 200 Neb. 74, 262 N. W. 2d 438 (1978).

Considering the fact issues in the light of the fore-

going rule, we proceed to a determination of the questions presented. Brezina alleges the evidence is undisputed that Grubaugh retained $13,500 of his money from September 20, 1973, to May 17, 1975, and he should be entitled to interest for the some 20 months he contends Grubaugh wrongfully kept his money. The law is well settled, where money or property belonging to another was not paid or turned over to the person entitled to receive it at the time when it should have been paid or turned over, interest is generally allowed. Workman v. Workman, 174 Neb. 471, 118 N. W. 2d 764 (1962).

In Halbert v. Food Host U. S. A., Inc., 189 Neb. 346, 202 N. W. 2d 735 (1972), we said: "[I]nterest is allowable * * * where money or property belonging to another is wrongfully withheld to the enrichment of the debtor and to the detriment of the creditor." This rule of law, however, has no application here. Brezina testified he decided to leave the downpayment with Grubaugh Bros. pending the outcome of his suit for specific performance. When he finally made demand for the money, it was promptly returned. The downpayment was not wrongfully withheld by Grubaugh Bros. The denial of interest is fully sustained by the record.

Brezina contends he should recover damages from Grubaugh Bros. for the loss of his bargain. It seems to be his contention that Grubaugh Bros. delayed in communicating his offer to Hill during which time Hill received a better offer. However, no mention is made in his brief concerning his testimony at trial that Hill would not sell to him because Grubaugh signed the contract. In any event, the trial court determined this factual issue against him.

The proposed amendment to plaintiff's petition was not filed of record. Brezina's counsel in his offer explained the substance as follows: "The amendment which we would be requesting would be to add causes of action against the defendant Hill

only. Those causes of action would allege causes against Mr. Hill based on at least three theories to include a theory of negligence, a theory of tortious interference and wrongfully posing as the agent of another, and in each of these, the plaintiff would be requesting compensation in the form of damages from the defendant Hill."

The trial court denied the motion to amend for the reason that the former judgment was res judicata as to all issues raised or which could have been raised at the time plaintiff filed his petition. Actually, the judgment on the pleadings was res judicata only insofar as it determined that the listing contract did not constitute an offer to any third party but was merely an employment contract between the owner and broker and that the broker had no authority to execute a sales contract on behalf of the Hills. The proposed amendments involve theories presupposing the validity of the contract, in one form or another. We have found the sales contract was not binding on the Hills. Consequently, there could be no liability for Hill's refusal to accept it.

In the original action, Brezina sought not only specific performance of the alleged contract but also included a specific claim for damages. All of the damages growing out of the alleged breach of contract were litigable in the original suit in equity. The law does not permit the complete remedy by specific performance to be split into separate actions for different elements of damages flowing from a single breach of contract. See Waldo v. Lockard, 101 Neb. 797, 165 N. W. 154 (1917).

There is no question Grubaugh Bros. performed their part of the listing contract by finding a "ready, able, and willing" purchaser for the property at a price in excess of that called for in the listing contract. In Fleming Realty & Ins., Inc. v. Evans, 199 Neb. 440, 259 N. W. 2d 604 (1977), we held: "A broker is entitled to his commission in accordance

with the terms of his listing contract, and the right to compensation is not impaired by subsequent inability or unwillingness of the owner to consummate the sale on the terms prescribed."

The Hill heirs contend the listing contract is unenforceable. Section 36-107, R. R. S. 1943, provides: "Every contract for the sale of lands between the owner thereof and any broker or agent employed to sell the same, shall be void, unless the contract is in writing and subscribed by the owner of the land and the broker or agent. Such contract shall describe the land to be sold, and set forth the compensation to be allowed by the owner in case of sale by the broker or agent."

The issue presented is whether an agent of the owner may sign on his behalf in view of the requirement that the contract be subscribed by the owner of the land. If the section is construed to permit an agent to sign, must the agent have written authorization?

In this case, the contract was actually signed by one of the owners. It is true, he signed as agent for the heirs of Hattie E. Hill, of which he was one. The evidence is undisputed that he had acted as rental agent for several years for all of the Hattie Hill heirs. The record indicates that each of the heirs told Everett that he had started the sale of the Hattie Hill land and he should finish it. Grubaugh was familiar with the fact that Everett Hill was handling the property for all of the heirs. On the record, the trial court made a fact determination that Everett J. Hill acted as agent for the defendants Hill within the scope of his authority for said disclosed principals and entered into a valid and enforceable real estate listing contract with the defendants Grubaugh.

We agree Grubaugh Bros. earned their commission. That is not the problem. The Hill heirs contend Grubaugh Bros. are not entitled to their com-

mission because they breached their fiduciary duties. We held in Schepers v. Lautenschlager, 173 Neb. 107, 112 N. W. 2d 767 (1962): "A commission cannot be collected by the agent for his services if he has willfully disregarded, in a material respect, an obligation which the law devolves upon him by reason of his agency."

In Vogt v. Town & Country Realty of Lincoln, Inc., 194 Neb. 308, 231 N. W. 2d 496 (1975), we held: "A real estate broker is an agent owing a fiduciary duty (1) to use reasonable care, skill, and diligence in procuring the greatest advantage for his client, and (2) to act honestly and in good faith, making full disclosures to his client of all material facts affecting his interests. A neglect to do so renders him liable to his client for whatever loss the latter may suffer as a consequence thereof."

The testimony of the parties is conflicting and somewhat confused. However, it seems apparent Grubaugh was not operating in the best interests of the property owners but was more concerned with the protection of his buyer as well as his own interests. It could be inferred from the record that he was of the opinion he could choose who the purchaser would be and the price to be paid, and he was not obligated to communicate all offers to the owners. It is evident Grubaugh did not communicate all offers to Hill. In this regard, we quote from Schepers v. Lautenschlager, *supra*: "The rule requiring a broker to act with utmost good faith toward his principal places him under a legal obligation to make a full, fair, and prompt disclosure to his employer of all facts within his knowledge which are or may be material to the matter in connection with which he is employed, which might affect his principal's rights and interests or influence his action in relation to the subject matter of the employment, or which in any way pertain to the discharge of the agency which the broker has undertaken."

We do not agree with the trial court's determination that Grubaugh Bros. was not liable to the property owners for costs and attorneys' fees because those expenses were proximately caused by the owners' breach of the listing contract. The listing contract did not require the property owners to accept any offer tendered by the broker in excess of a stipulated amount. The property owners still had the right to accept or refuse any offer tendered. This does not mean that they would not have been liable for the broker's commission on any firm offer secured in excess of the stipulated amount.

As we view the record, the action for specific performance filed by Brezina can be attributed directly to the signing of the purchase agreement by Grubaugh and his filing of it with the register of deeds of Butler County. His signing of the agreement implied that he had authority to do so for the owners and gave Brezina the opportunity to attempt to hold the owners to the contract signed by Grubaugh.

By his own testimony, Grubaugh signed the purchase agreement and filed it after Hill refused to sell to Brezina because he thought it was possible to get a better offer. Hill was under no obligation to sell the land to Brezina and his refusal to sign the sales contract did not constitute a breach of the listing agreement. As suggested, at the very most it created a liability on the part of the Hill heirs to Grubaugh for the commission provided by the listing contract.

There is no justification to be found in the record, and we can think of none for the clouding of the title by the filing of the Brezina contract signed by Grubaugh as agent for Hill. It is obvious from the record that except for this act on the part of Grubaugh, the land could have been promptly sold by him or by the Hill heirs to the ultimate purchasers for $140,000. If Grubaugh had not signed the sales contract, there would have been no specific performance action.

We also note that Grubaugh admits he told Brezina the papers had been filed and so far as he was concerned Brezina had a contract.

There is no question Grubaugh was entitled to a commission for securing a ready, able, and willing purchaser for $135,000. The question presented, however, is whether or not he also is liable to the property owners for the costs and attorneys' fees he proximately caused them by his action. He should have known at the time he signed and filed the purchase agreement he was violating his fiduciary obligation to the Hills. Grubaugh specifically testified he filed the sales agreement to protect Brezina; that it would protect him from Hill signing the property to someone else. His obligation was to protect the owners of the property and not to take action against them to protect a prospective purchaser. Until the sales agreement was signed by Grubaugh as the purported agent of Hill, it was nothing more than an offer to purchase.

On the record the Hill heirs have sustained damages in excess of any commission earned by Grubaugh. The trial court was in error in dismissing their cross-petition against Grubaugh Bros.

We affirm the judgment insofar as it applies to the appellant Brezina. We reverse the judgment dismissing the cross-petition of the Hill heirs against Grubaugh Bros. as well as the judgment rendered against them in favor of Grubaugh Bros. We remand the action for further proceedings consistent with this opinion. Costs of this appeal are to be taxed equally to appellant Brezina and appellee Grubaugh Bros.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.