Roland P. SIGURDSON, Plaintiff and Appellant,

v.

LAHR & LAHR, INC., Defendant and Third–Party Plaintiff and Appellee,

v.

Joseph GRIFFIN, d.b.a. Griffin Realty & Home Builders, Inc., Third–Party Defendant and Appellee.

Civ. No. 9819.

Supreme Court of North Dakota.

Nov. 25, 1980.

Hjellum, Weiss, Nerison, Jukkala & Wright, Jamestown, for plaintiff and appellant; argued by Gerald W. Jukkala, Jamestown.

Nilles, Hansen, Selbo, Magill & Davis, Fargo, for defendant and appellee Lahr & Lahr, Inc.; argued by Patricia R. Ellingson, Fargo.

Paulson & Simonson, Valley City, for third–party defendant and appellee Joseph Griffin; no appearance.

SAND, Justice.

Plaintiff, Roland Sigurdson [Sigurdson] appealed from a summary judgment in favor of defendant, Lahr & Lahr, Inc. [Lahr], and against Sigurdson issued by the Burleigh County district court.

This case arises out of a series of transactions involving four parties. Sigurdson and Lahr entered into a listing agreement dated 16 Mar 1976 giving Lahr the right to sell 800 acres of land owned by Sigurdson in McLean County, North Dakota. The listing price was $560,000. John Slinde [Slinde] was interested in the McLean County land and in July 1976 made an offer to Sigurdson which consisted of a trade of Slinde's 640 acres in Mercer County, North Dakota, plus $350,000.00 in cash for Sigurdson's McLean County land. Sigurdson rejected this offer because he wanted cash only for his property, and he did not want to become the owner of any other parcel of land.

Slinde then entered into an agreement dated 11 Aug 1976 with Lahr listing Slinde's 640 acres in Mercer County for $180,000.00. Jopseph Griffin [1] displayed an

---

1. The record reflects that Griffin was acting in his capacity as president of Griffin Realty & Home Builders, Inc.

interest in the Mercer County land and indicated to a sales representative of Lahr, Robert Olson [Olson], that he was prepared to make an offer to purchase the Mercer County property.

Olson prepared a transaction whereby Sigurdson, Slinde, and Griffin would each achieve the desired results. Two earnest money agreements were entered into to achieve these results. One of the earnest money agreements, signed by Sigurdson on 14 Feb 1977, provided that Slinde would exchange his Mercer County property plus $200,000.00 in cash for Sigurdson's McLean County property. On 6 Apr 1977 the transaction covering the Slinde–Sigurdson exchange was completed and Lahr was paid a $22,200.00 commission.

The second earnest money agreement, also signed by Sigurdson on 14 Feb 1977, provided that Griffin would purchase the Mercer County property from Sigurdson for $180,000.00. This earnest money agreement provided for a $500.00 down payment by Griffin, with $5,000.00 due on 1 May 1977 and $39,500.00 due on or before 1 July 1977. The balance was to be paid in three annual payments of $45,000.00, plus interest at the rate of 8% on the unpaid balance. Griffin made the $500.00 down payment, but subsequently failed to meet his 1 May 1977 payment due under the earnest money agreement.

Griffin made assurances to Lahr and Sigurdson that the $5,000.00 due on that date would be included in the 1 July 1977 payment. These two payments were never made and Griffin indicated his intent to default on the earnest money agreement at an August 1977 meeting attended by Olson, Sigurdson, and Griffin. At this meeting Griffin stated that he could have completed the transaction but he desired not to do so.

As a result of Griffin's default, Sigurdson brought this action against Lahr alleging negligence, fraud, and the breach of an express and implied contract. Lahr answered and denied responsibility for the nonperformance under the contract entered

into by Sigurdson and Griffin,[2] and alleged that if Sigurdson was damaged, his damages were proximately caused by his own intentional and negligent acts. Lahr moved for a summary judgment in its favor. The motion was granted by the district court and judgment was entered 9 Apr 1980. Sigurdson appeals from that judgment to this court.

Sigurdson asserts on this appeal that summary judgment was improperly granted because there was a genuine issue of material facts, and Lahr was not entitled to a judgment as a matter of law. Sigurdson asserts these facts relate to whether or not Lahr made false representations concerning the sale of the Mercer County land to Griffin which improperly induced Sigurdson to enter into the earnest money agreement with Griffin. Sigurdson also asserts that there is a dispute as to whether or not Lahr received a commission from Sigurdson for the transaction Griffin defaulted on.

Rule 56, North Dakota Rules of Civil Procedure, pertaining to summary judgments provides in pertinent part as follows:

"(b) For Defending Party. A party against whom a claim, counterclaim, or cross–claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

"(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment, as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a gen-

---

**2.** Lahr filed a third–party complaint seeking "contribution and/or indemnity" from Griffin in the event that Sigurdson prevailed in the action against Lahr.

uine issue as to the amount of damages. Summary judgment, when appropriate, may be rendered against the moving party.

"(e) . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may or may not rest upon the mere allegations or denials in his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

■ The summary judgment procedure of Rule 56, NDRCivP, is a procedural device available for promptly and expeditiously disposing of a controversy without a trial when there is no dispute as to material facts or when only a question of law is involved. *Zuraff v. Empire Fire & Marine Insurance Co.*, 252 N.W.2d 302 (N.D.1977). Judge Cordozo succinctly dealt with the purpose of summary judgment when he stated:

"The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of trial." *Richard v. Credit Suisse*, 242 N.Y. 346, 152 N.E. 110, 111 (1926).

■ The party moving for a summary judgment must clearly demonstrate that there is no genuine issue of material fact. *Yegen v. City of Bismarck*, 291 N.W.2d 422 (N.D.1980). Thus, we have said that:

"A motion for summary judgment will be granted only if, after taking a view of the evidence in a light most favorable to the party against whom summary judgment is demanded, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Herman v. Magnuson*, 277 N.W.2d 445, 454 (N.D.1979).

■ Even absent a genuine issue as to a material fact, summary judgment is inappropriate if inferences reasonably deducible from undisputed facts are conflicting. *Herman v. Magnuson, supra.* Where different factual inferences may be drawn, they must be drawn in favor of the party opposing summary judgment. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

In *Kirton v. Williams Electric Co–op, Inc.*, 265 N.W.2d 702 (N.D.1978), we quoted with approval the following from the syllabus of *Wolff v. Light*, 156 N.W.2d 175 (N.D. 1968):

"In cases involving issues of negligence, contributory negligence, assumption of risk and proximate cause, where the standard of the reasonable man must be applied to conflicting testimony, and even where there is no dispute as to the facts, where inference may be reasonably drawn from the evidence that indicates the presence of a genuine issue of fact, summary judgment should not be granted, but these issues should be tried in the usual manner."

■ The court may consider the pleadings, depositions, admissions, affidavits, and interrogatories, and inferences to be drawn therefrom, to determine whether or not summary judgment is appropriate. *Yegen, supra.*

Thus, we must consider the pleadings, depositions, and affidavits on file in a light most favorable to Sigurdson and conflicting factual inferences, if any, must be drawn in his favor.

The district court's memorandum decision was dated 2 Apr 1980. The district court's order for judgment dated 9 Apr 1980 specifically mentions the basis of the motion was the records and the file in the case,

". . . the pleadings herein, the Affidavits of Gary E. Lahr, Robert W. Olson, and Partiricia R. Ellingson on file herein, the Depositions of Gary E. Lahr, Robert W. Olson, Roland Sigurdson and Joseph A. Griff and all of the papers and documents on file . . . ."

The record reflects that Sigurdson submitted an affidavit dated 2 Apr 1980 in opposition to Lahr's motion for summary judgment but the record does not reflect

whether or not this affidavit was considered by the district court. At oral argument, counsel for Sigurdson asserted that he was granted additional time after the argument on the summary judgment motion to file an affidavit opposing the summary judgment and that the affidavit[3] was timely filed. However, the record does not reflect whether or not the affidavit was timely filed. Because the pleadings, depositions, and other affidavits on file raise a genuine issue of material fact we need not consider Sigurdson's affidavit.

■ The duties and liabilities of real estate brokers and salesmen are essentially those which an agent owes to his principal. *Miller v. Iowa Real Estate Commission*, 274 N.W.2d 288 (Iowa 1979); *Klawitter v. Billick*, 308 Minn. 325, 242 N.W.2d 588 (1976). The broker is normally under an obligation to produce a buyer who is ready, willing and able to accept the terms offered by the property owners. *Goetz v. Anderson*, 274 N.W.2d 175 (N.D.1978).

■ The broker is under a legal obligation to disclose material facts which might affect his principal's interests or influence his action in relation to the subject matter of the employment. *Brezina v. Hill*, 202 Neb. 773, 277 N.W.2d 224 (1979). It is the individual interests of the principal that furnish the criteria as to what information is material in the sense that it should be communicated by the broker to the principal.

Although a broker normally does not guarantee that a transaction will be completed, there may be situations in which the broker's conduct in arranging the transaction and the seller's reliance on the conduct may increase the broker's obligation. This may be such a situation.

The transaction involved in this instance was not an ordinary real estate transaction, but involved two transactions to achieve the desired result for Sigurdson, thus raising the further issue of commissions. The record reflects that Olson knew that Sigurdson desired a cash deal for his McLean County land and that he did not want to participate in a transaction whereby he would end up owning the Mercer County land. Sigurdson's deposition reflects that he received assurances from Olson the transaction was being properly handled to achieve that result and that the $500 earnest money was a sufficient amount for the transaction.

The deposition testimony of Sigurdson concerning the amount of the earnest money reads as follows:

"Q And specifically now for the record, tell us what portion of Exhibit 3 [earnest money agreement between Sigurdson and Griffin] you asked Mr. Olson about.

"A About the 500–dollar earnest money.

"Q And what did you ask him?

"A I asked him how on a deal of that size, it's rather a small earnest money, and he said—well, he said, 'When you're dealing with a fellow realtor and a man that you can trust, that you really wouldn't need any earnest money.'"

■ The inferences from these assurances, coupled with inferences concerning Sigurdson's level of familiarity with real estate transactions at that time, could lead to the conclusion that Sigurdson was improperly induced to enter the transaction.

---

3. The affidavit, together with the deposition testimony of Sigurdson, raises a genuine issue as to the commission earned. The deposition testimony states in part as follows:

"Q (Mr. Hansen continuing) And, again, in an attempt to refresh your recollection, isn't it true that you have never paid a real estate commission to Lahr and Lahr or Mr. Olson on the Mercer County sale?

"A No; I paid the commission.

"Q And how much do you claim to have paid them on that Mercer County sale?

"A $10,200.

Sigurdson's affidavit states in part as follows:

"Affiant further deposes and says that Lahr and Lahr, Inc. charged this affiant a commission of $22,800.00 for the sale of the McLean County and Mercer County land when in fact, only the McLean County land had been sold."

In addition to these inferences, the issues of negligence and fraud have been raised. These matters should have been determined by the trier of facts and, therefore, summary judgment was, inappropriate. Sigurdson had demanded a jury trial.

Accordingly, the summary judgment is vacated and the case is remanded to the Burleigh County district court for a jury trial on the issues of fact, unless the parties specifically waive a jury trial.

ERICKSTAD, C. J., VANDE WALLE and PEDERSON, JJ., and LECLERC, District Judge, concur.

LECLERC, District Judge, sitting in place of PAULSON, J., disqualified.