In re Estate of Mary Ann Clinger, deceased.
Orin M. Clinger et al., appellants, v.
Shaun Clinger, Personal Representative
of the Estate of Mary Ann Clinger,
deceased, et al., appellees.

___ N.W.2d ___

Filed December 11, 2015.   No. S-13-769.

1. **Jury Instructions: Appeal and Error.** Whether a jury instruction is correct is a question of law, which an appellate court independently decides.
2. **Trial: Courts: Juries: Appeal and Error.** Whether to answer a question of law posed by a jury which has retired for deliberations is a matter entrusted to the discretion of the trial court, and in the absence of an abuse of that discretion, its action will not be disturbed on appeal.
3. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.
4. **Rules of Evidence: Appeal and Error.** Because the exercise of judicial discretion is implicit in determinations of admissibility under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2008), the trial court's decision will not be reversed absent an abuse of discretion.
5. **Trial: Evidence: Appeal and Error.** In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.
6. **Wills: Undue Influence: Proof.** Under Neb. Rev. Stat. § 30-2431 (Reissue 2008), contestants of a will have the burden of establishing undue influence and carry the ultimate burden of persuasion.
7. ____: ____: ____. To show undue influence, a will contestant must prove the following elements by a preponderance of the evidence: (1) The testator was subject to undue influence, (2) there was an opportunity to exercise such influence, (3) there was a disposition to

exercise such influence, and (4) the result was clearly the effect of such influence.

8. **Wills: Undue Influence.** Undue influence sufficient to defeat a will is manipulation that destroys the testator's free agency and substitutes another's purpose for the testator's.

9. **Undue Influence: Proof.** Because undue influence is often difficult to prove with direct evidence, it may be reasonably inferred from the facts and circumstances surrounding the actor: his or her life, character, and mental condition.

10. ____: ____. Although the burden of going forward on the issue of undue influence may shift to the proponent of the written instrument, the ultimate burden of proof remains at all times on the party asserting the issue.

11. **Rules of Evidence: Presumptions: Proof.** According to Neb. Evid. R. 301, Neb. Rev. Stat. § 27-301 (Reissue 2008), a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.

12. **Rules of Evidence: Presumptions.** The "presumption of undue influence" is not a true presumption within the meaning of Neb. Evid. R. 301, Neb. Rev. Stat. § 27-301 (Reissue 2008).

13. **Wills: Undue Influence: Presumptions.** If a contestant's evidence shows a confidential or fiduciary relationship, coupled with other suspicious circumstances, the contestant has introduced evidence sufficient to justify an inference of undue influence.

14. **Wills: Undue Influence: Presumptions: Proof.** The inference of undue influence may be rebutted by proof that the testator had competent independent advice and that the will was his or her own voluntary act.

15. **Undue Influence: Proof.** The party seeking to establish undue influence has not met his or her burden of proof if all of the evidence is circumstantial and the inferences to be drawn therefrom are equally consistent with the hypothesis that undue influence was not exercised and the hypothesis that such influence was exercised.

16. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction.

17. **Jury Instructions: Appeal and Error.** Jury instructions do not constitute prejudicial error if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence.

18. **Jury Instructions.** The general rule is that whenever applicable, the Nebraska Jury Instructions are to be used.

19. **Trial: Juries.** The trial judge is in the best position to sense whether the jury is able to proceed with its deliberations and has considerable discretion in determining how to respond to communications indicating that the jury is experiencing confusion.

20. **Jury Instructions: Presumptions.** It is presumed a jury followed the instructions given in arriving at its verdict, and unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded.

21. **Wills.** A prior will, executed when the testator's testamentary or mental capacity was and is unquestioned, and as to which the existence of undue influence is not charged, and which conforms substantially as to the results produced to the instrument contested, may be considered as competent evidence for the purpose of refuting charges of undue influence or want of testamentary or mental capacity by showing that the testator had a constant and abiding scheme for the distribution of his property.

22. **Constitutional Law: Trial: Witnesses.** The Sixth Amendment right to confront witnesses and its Nebraska equivalent do not apply to a civil case.

23. **Rules of Evidence: Witnesses: Hearsay.** When a witness is unavailable for cross-examination, his or her statements are admissible only if they bear adequate indicia of reliability.

24. **Rules of Evidence: Hearsay: Presumptions.** Hearsay that falls within a firmly rooted hearsay exception is presumptively reliable and trustworthy.

25. **Trial: Waiver: Appeal and Error.** A litigant's failure to make a timely objection waives the right to assert prejudicial error on appeal.

26. **Appeal and Error.** Error without prejudice provides no ground for relief on appeal.

27. **Courts: Appeal and Error.** Upon further review from a judgment of the Nebraska Court of Appeals, the Nebraska Supreme Court will not reverse a judgment which it deems to be correct simply because its reasoning differs from that employed by the Court of Appeals.

Petition for further review from the Court of Appeals, Moore, Chief Judge, and Riedmann and Bishop, Judges, on appeal thereto from the District Court for Custer County, Mark D. Kozisek, Judge. Judgment of Court of Appeals affirmed.

Bradley D. Holbrook and Nicholas R. Norton, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellants.

Steven P. Vinton, of Bacon & Vinton, L.L.C., for appellee Shaun Clinger.

George G. Vinton for appellees Calvin Clinger and Patricia Clinger.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## I. INTRODUCTION

This appeal arises from an unsuccessful will contest, premised upon undue influence and tried to a jury. The Nebraska Court of Appeals affirmed the district court's judgment.[1] We granted further review primarily to determine whether the jury should have been instructed regarding a "presumption of undue influence." After both sides have sustained their respective burdens of production, an instruction describing a permissible or probable inference of undue influence as a "presumption" would conflict with the statutory burden of proof and likely mislead the jury. The Court of Appeals correctly affirmed the district court's refusal to give the contestants' proposed instructions. And we agree with the Court of Appeals that the district court did not abuse its discretion in responding to a jury question or in admitting, in part, a video of the execution of an earlier will. Even though our reasoning differs somewhat from that of the Court of Appeals, we affirm its decision.

## II. BACKGROUND

The facts are set forth in greater detail in the Court of Appeals' published decision.[2] We summarize the relevant

---

[1] *In re Estate of Clinger*, 22 Neb. App. 692, 860 N.W.2d 198 (2015).

[2] See *id.*

background to the extent necessary to provide context for the errors asserted on further review.

### 1. Parties

The decedent, Mary Ann Clinger, had six children: Mary E. Chalupa, Sandra A. Goodwater, LeRoy A. Clinger, Orin M. Clinger, Calvin Clinger, and Melvina D. Bundy. Four of her children—Orin, Mary, Melvina, and Sandra—were the will's contestants. The proponents were Calvin; his wife, Patricia Clinger; and their son, Shaun Clinger.

### 2. Mary Ann and Her Wills

In 2000, the contestants became concerned about Mary Ann's financial situation. They were also uneasy about the influence Calvin had over Mary Ann. The contestants initiated a conservatorship proceeding, and the court appointed a permanent conservator for Mary Ann in January 2001. The conservatorship made Mary Ann upset with the contestants, because she felt that it was not necessary.

In August 2001, Mary Ann executed a will in which she left her 320-acre farm to Calvin. This will directed that Mary Ann's home be sold, with LeRoy and Sandra each receiving one-third of the net proceeds and the other one-third being divided equally between Orin, Mary, and Melvina. Mary Ann devised the remainder of her property equally to Calvin and LeRoy. The execution of this will was videotaped.

Over the next 10 years, Mary Ann's health deteriorated. In January 2011, she was diagnosed with lung cancer. She was prescribed numerous medications, but her doctor described her as "sharp" and did not detect any of the medications' potential side effects.

In January 2011, Mary Ann asked Calvin to draft a new will for her. The disposition of property was similar to that of the 2001 will, but she made some changes in the percentages each child received. Calvin took Mary Ann to see an attorney, who drafted a new will for Mary Ann in February. The February 2011 will also left all of the farmland to Calvin. The proceeds

from the sale of Mary Ann's house and its contents were to be divided among her other five children, and the remainder of the estate was to go to Calvin. The will specified that Mary Ann was aware the devise to Calvin was substantially more valuable than the devises to the other children, but that she was intentionally making those devises to reflect Calvin's dedication and service to her throughout the years.

On March 5, 2011, Mary Ann died at age 89. The contestants objected to the petition to admit to probate either the February 2011 will or the August 2001 will, claiming that the wills were invalid because Mary Ann lacked testamentary capacity and because the devises were the result of undue influence. The will contest was transferred to the district court.

### 3. TRIAL

The district court conducted a jury trial regarding the 2011 will on two issues: testamentary capacity and undue influence. There was contradicting evidence regarding whether Calvin improperly influenced Mary Ann or whether she favored him because of his assistance with the farm and his support regarding her feelings about the conservatorship.

During the trial, the parties also adduced evidence regarding the 2001 will. The proponents offered the video of the will signing. The attorney who drafted the will testified that he arranged for the video because he was "fairly certain there was going to be a will contest." The contestants objected to the video on the bases that it was duplicative and hearsay and that it violated "Rule 403."

Although the court first stated that it was inclined to instruct the jury to consider the video only to determine testamentary capacity and not to consider it as to influence, the actual instruction, which followed a colloquy with counsel, was less restrictive. Prior to showing the video, the court limited the jury's use of the video by stating: "There are specific questions asked by [the attorney depicted] regarding influence and whether Calvin . . . influenced Mary Ann . . . . You are to disregard those questions and answers given and they may not

be considered by you as evidence on the issue of undue influence." The video was played for the jury and sent into the jury room during deliberation.

After the contestants rested, the proponents moved for a directed verdict on both issues. The district court granted the motion on the issue of testamentary capacity but denied it as to undue influence.

During the jury instruction conference, the contestants offered proposed instructions regarding a presumption of undue influence. The court declined to give the proposed instructions.

During deliberation, the jury asked a question regarding the burden of proof. The court referred the jury to the instruction on the burden of proof.

The parties later stipulated that the jury would be allowed to return a verdict if seven or more members of the jury agreed to it. The jury ultimately rendered an 8-to-4 verdict, finding that the 2011 will was valid.

### 4. Court of Appeals' Decision

The contestants appealed, and the Court of Appeals affirmed the district court's judgment. Although in the appellate court the contestants assigned error to the granting of the directed verdict on testamentary capacity, they did not seek further review on that issue.

With regard to the presumption of undue influence, the Court of Appeals determined that the contestants presented evidence that could support a finding of a confidential relationship coupled with suspicious circumstances. The court noted that Mary Ann began living with Calvin and Patricia in January 2009 and that Mary Ann wrote checks to them in 2009 and 2010 totaling over $15,000. But the court reasoned that the proponents then rebutted the presumption. The court noted that Patricia testified that she was a licensed practical nurse and that Mary Ann wrote her checks to reimburse her for the care she provided, because it was less expensive than paying for a nursing home. Mary Ann had her own attorney

when she lived with Calvin and his wife and would speak with him alone. Also, Mary Ann repeatedly explained that she was upset by the conservatorship and that she wished to leave the farm to Calvin because of his assistance to her.

The Court of Appeals reasoned that the presumption of undue influence in a will contest is not an evidentiary presumption, but, rather, is a "bursting bubble" presumption that disappears when evidence to rebut the presumption is introduced. And because the proponents offered rebuttal evidence, the court determined that the presumption disappeared and that thus, there was no basis upon which to instruct the jury regarding the presumption. The court stated, "Since the burden of proof remained on the contestants to prove undue influence, and because the jury instructions given properly placed this burden on the contestants, they were not prejudiced by the court's failure to give the tendered instructions."[3]

The Court of Appeals found no abuse of discretion by the district court in refusing to further instruct the jury in response to its question about the burden of proof.

The Court of Appeals determined that the video regarding the 2001 will was admissible because it pertained to Mary Ann's state of mind and fell under the hearsay exception contained in Neb. Evid. R. 803(2), Neb. Rev. Stat. § 27-803(2) (Reissue 2008). The court stated that Mary Ann's responses to questions regarding undue influence would be hearsay if offered to prove the truth of the matter asserted, but noted that the district court instructed the jury to not consider the video as to whether it showed influence. The court determined that it was not an abuse of discretion to admit the video as evidence of Mary Ann's state of mind, with the limiting instruction given.

The Court of Appeals rejected the assertion that the video was cumulative. The court noted that the jury had not observed or heard from Mary Ann. The court also determined that the

---

[3] *Id.* at 708-09, 860 N.W.2d at 213.

video did not violate the contestants' rights to cross-examine witnesses against them. The court stated:

> [W]here guarantees of trustworthiness exist, cross-examination of a declarant in a civil case may not be required if the statement sought to be introduced falls within a statutory exception. As stated above, because the present state-of-mind exception allowed admission of the video, and the court properly gave a limiting instruction as to the purpose for which it could be considered, the contestants were not denied their right to cross-examination.[4]

The Court of Appeals found no error in allowing the video into the jury room during deliberation. The court stated that it would analyze the issue despite the absence of an objection to the video's being taken into the jury room and the absence of any indication that the jury replayed the video. In addressing the merits of the argument, the Court of Appeals noted that courts have broad discretion in allowing the jury unlimited access to exhibits that constitute substantive evidence. Relying upon our decision in *State v. Vandever*,[5] the court concluded that the video was nontestimonial evidence and that the district court did not abuse its discretion in allowing the jury unlimited access to it during deliberations.

We granted the contestants' petition for further review.

### III. ASSIGNMENTS OF ERROR

In the contestants' petition for further review, they assign that the Court of Appeals erred in affirming the district court's (1) refusal to instruct the jury on the presumption of undue influence as proposed by the contestants, (2) refusal to further instruct the jury in response to its question about the proper burden of proof, and (3) admission into evidence of the video of the 2001 will signing and allowing the jury access to it during deliberation.

---

[4] *Id.* at 703, 860 N.W.2d at 210.

[5] *State v. Vandever*, 287 Neb. 807, 844 N.W.2d 783 (2014).

## IV. STANDARD OF REVIEW

[1] Whether a jury instruction is correct is a question of law, which an appellate court independently decides.[6]

[2] Whether to answer a question of law posed by a jury which has retired for deliberations is a matter entrusted to the discretion of the trial court, and in the absence of an abuse of that discretion, its action will not be disturbed on appeal.[7]

[3-5] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[8] Because the exercise of judicial discretion is implicit in determinations of admissibility under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2008), the trial court's decision will not be reversed absent an abuse of discretion.[9] In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.[10]

## V. ANALYSIS

### 1. Jury Instructions

#### (a) Proposed Instructions on
#### Undue Influence

The contestants challenge the district court's refusal of their proposed instructions regarding a presumption of undue influence. They offered two instructions, each of which addressed this presumption.

The first instruction sought an addition to the statement of the case. It proposed to instruct the jury that a presumption of undue influence arose if the contestants' evidence showed

---

[6] *Warner v. Simmons*, 288 Neb. 472, 849 N.W.2d 475 (2014).

[7] *Sedlak Aerial Spray v. Miller*, 251 Neb. 45, 555 N.W.2d 32 (1996).

[8] *Hike v. State*, 288 Neb. 60, 846 N.W.2d 205 (2014).

[9] See *Curran v. Buser*, 271 Neb. 332, 711 N.W.2d 562 (2006).

[10] *Hess v. State*, 287 Neb. 559, 843 N.W.2d 648 (2014).

that Calvin and/or Patricia had a confidential relationship with Mary Ann, which was coupled with other suspicious circumstances.

The second proposed instruction described a burden of proof on undue influence. It proposed to instruct as follows:

> In connection with this claim of undue influence, the burden is on contestants to establish facts which show that a confidential relationship existed between Mary Ann . . . and her son, Calvin . . . , and/or his wife, Patricia . . . , and the existence of suspicious circumstances. If such facts are established, a presumption of undue influence arises and the burden of going forward with the evidence to rebut the presumption then shifts to the proponent[s].
>
> The proponent[s] may rebut this presumption by evidence which shows that there was no undue influence or by evidence which shows that Mary Ann . . . had competent independent advice and that [the will] was her own voluntary act.

The district court declined both instructions. The court explained that the burden of proof always remained on the contestants to show undue influence. Without referring to any presumption of undue influence, the court instead instructed the jury that the burden of proving undue influence was on the contestants. The instruction given by the court stated in pertinent part:

> The contestants . . . claim that [the will] is not the valid Will of Mary Ann . . . because Calvin . . . and/or Pat[ricia] . . . exerted undue influence over Mary Ann . . . .
>
> (2) BURDEN OF PROOF: In connection with contestants' claim, the burden is on the contestants to prove by the greater weight of the evidence each of the following:
>
> (a) That Mary Ann . . . was a person who would be subject to undue influence;
>
> (b) That there was an opportunity to exercise undue influence upon Mary Ann . . . ;
>
> (c) That there was a disposition to exercise undue influence upon Mary Ann . . . ; and

(d) That [the will] was the result of such undue influence.

(3) EFFECT OF FINDINGS:

(a) If the contestants have not met this burden of proof, your verdict must be that [the will] is the valid Will of Mary Ann . . . .

(b) If the contestants have met this burden of proof, then your verdict must be that [the will] is not the valid Will of Mary Ann . . . .

This instruction was consistent with Nebraska's pattern jury instruction explaining the statement of a claim of undue influence.[11] And the court's instructions defined undue influence using another pattern jury instruction.[12]

[6-10] We first recall several well-settled principles of the law of undue influence. By statute, contestants of a will have the burden of establishing undue influence and carry the ultimate burden of persuasion.[13] Because the specific language will become important, we quote it here: "Contestants of a will have the burden of establishing undue influence . . . . Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof."[14] To show undue influence, a will contestant must prove the following elements by a preponderance of the evidence: (1) The testator was subject to undue influence, (2) there was an opportunity to exercise such influence, (3) there was a disposition to exercise such influence, and (4) the result was clearly the effect of such influence.[15] Undue influence sufficient to defeat a will is manipulation that destroys the testator's free agency and substitutes another's purpose for the testator's.[16]

---

[11] See NJI2d Civ. 16.06.

[12] See NJI2d Civ. 16.07.

[13] See Neb. Rev. Stat. § 30-2431 (Reissue 2008).

[14] *Id.*

[15] *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009).

[16] *Id.*

Because undue influence is often difficult to prove with direct evidence, it may be reasonably inferred from the facts and circumstances surrounding the actor: his or her life, character, and mental condition.[17] Although the burden of going forward on the issue of undue influence may shift to the proponent of the written instrument, the ultimate burden of proof remains at all times on the party asserting the issue.[18]

[11] The contestants rely on a concept referred to as a "presumption of undue influence." According to statute, a presumption "imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence."[19]

[12] But nearly 40 years ago, we held that the "presumption of undue influence" was not a true presumption within the meaning of § 27-301.[20] We explained that in connection with undue influence, "presumption" appeared to have been intended to mean a permissible or probable inference.[21] And several of our cases thereafter spoke of an "inference" of undue influence.[22] But occasionally, we have reverted to the former

---

[17] *Goff v. Weeks*, 246 Neb. 163, 517 N.W.2d 387 (1994).

[18] See *id.*

[19] See Neb. Evid. R. 301, Neb. Rev. Stat. § 27-301 (Reissue 2008).

[20] See *McGowan v. McGowan*, 197 Neb. 596, 250 N.W.2d 234 (1977). See, also, *Anderson v. Claussen*, 200 Neb. 74, 262 N.W.2d 438 (1978).

[21] See *McGowan v. McGowan, supra* note 20.

[22] See, *Caruso v. Parkos*, 262 Neb. 961, 637 N.W.2d 351 (2002) (deed); *In re Estate of Disney*, 250 Neb. 703, 550 N.W.2d 919 (1996) (elective share of augmented estate); *In re Estate of Wagner*, 246 Neb. 625, 522 N.W.2d 159 (1994) (will); *Goff v. Weeks, supra* note 17 (life insurance proceeds); *Pruss v. Pruss*, 245 Neb. 521, 514 N.W.2d 335 (1994) (constructive trust); *Miller v. Westwood*, 238 Neb. 896, 472 N.W.2d 903 (1991) (installment contract); *Pawnee County Bank v. Droge*, 226 Neb. 314, 411 N.W.2d 324 (1987) (guaranty); *In re Estate of Price*, 223 Neb. 12, 388 N.W.2d 72 (1986) (will); *In re Estate of Wagner*, 220 Neb. 32, 367 N.W.2d 736 (1985) (conservatorship); *Craig v. Kile*, 213 Neb. 340, 329 N.W.2d 340 (1983) (deed); *McDonald v. McDonald*, 207 Neb. 217, 298 N.W.2d 136 (1980) (deed).

nomenclature.[23] Most recently, in *In re Estate of Hedke*,[24] we discussed in detail a "presumption of undue influence" and noted tension concerning the proof necessary to rebut a presumption of undue influence.

But none of these later cases referring to a "presumption" of undue influence involved the instructions to be given to a jury in a will contest. In *In re Estate of Hedke*, we determined that in a will contest tried to the bench, the trial court was clearly wrong in rejecting the contestant's claim of undue influence.[25] Thus, we applied the usual standard of review of a probate court's factual findings.[26] In *In re Estate of Novak*,[27] we reviewed a will contest where a verdict was directed at the close of the contestant's evidence. In that situation, the motion for directed verdict admits the truth of all material and relevant evidence submitted by the contestant, and the contestant is to have it and all inferences fairly deducible therefrom viewed in the most favorable light in testing the correctness of the court's granting the motion.[28] Each of the other cases involved an action in equity to set aside a deed. And, of course, equitable actions are tried to the bench.[29]

Although a comment in NJI2d seems to suggest that such an instruction might be given, the cited cases do not support giving one. NJI2d Civ. 16.07 provides the pattern instruction defining undue influence. Under this instruction, one of

---

[23] See, *In re Estate of Hedke, supra* note 15 (will); *In re Estate of Novak*, 235 Neb. 939, 458 N.W.2d 221 (1990) (will); *Schaneman v. Schaneman*, 206 Neb. 113, 291 N.W.2d 412 (1980) (deed); *Rule v. Roth*, 199 Neb. 746, 261 N.W.2d 370 (1978) (deed).

[24] *In re Estate of Hedke, supra* note 15.

[25] *Id.*

[26] *Id.* (probate court's factual findings have effect of verdict and will not be set aside unless clearly wrong).

[27] *In re Estate of Novak, supra* note 23.

[28] *Id.*

[29] See *Jacobson v. Shresta*, 288 Neb. 615, 849 N.W.2d 515 (2014).

the comments states, "Further instruction may be necessary in a case that involves a confidential or fiduciary relationship." The comment cites to three cases,[30] but these cases shed little light on instructions to be given the jury. In one case,[31] we recited that a confidential relationship between the testator and a beneficiary does not raise a presumption that the beneficiary exercised undue influence, but that the relationship between the two may be considered along with all of the other facts and circumstances in determining whether undue influence existed. In another case,[32] we merely determined that the evidence was insufficient to justify submitting the issue of undue influence to the jury. And in the last case cited in the comment,[33] we upheld a trial court's refusal to give proffered instructions to the effect that a confidential relationship existed between the testatrix and a beneficiary and that undue influence was largely a matter of inference and facts surrounding the testatrix and would rarely be established by direct proof. We stated that the instructions given by the court adequately covered the matters contained in the proposed instructions and that the relationship between the testatrix and beneficiary may be considered along with all of the other facts and circumstances in the case in determining undue influence.

An earlier case discussing instructing the jury on a presumption of undue influence is likewise of little assistance. In that case,[34] the trial court instructed the jury that a presumption of undue influence arose in the case of a confidential adviser who was a beneficiary. We stated that the

---

[30] *Cook v. Ketchmark*, 174 Neb. 222, 117 N.W.2d 375 (1962); *In re Estate of Thompson*, 153 Neb. 375, 44 N.W.2d 814 (1950); *In re Estate of Goist*, 146 Neb. 1, 18 N.W.2d 513 (1945).

[31] *Cook v. Ketchmark, supra* note 30.

[32] *In re Estate of Thompson, supra* note 30.

[33] *In re Estate of Goist, supra* note 30.

[34] *In re Estate of Kajewski*, 134 Neb. 485, 279 N.W. 185 (1938).

court correctly instructed the jury that when a beneficiary assisted in the preparation of the will, there was a presumption that undue influence secured the will. But we explained that because "the presumption is the only evidence of undue influence, and the presumption is not evidence, there is no evidence sufficient to submit the question of undue influence to the jury."[35] Thus, we stated that the matter of undue influence as to a particular beneficiary was erroneously submitted to the jury.

And we note that these earlier cases, including the three cases mentioned in the comment to NJI2d Civ. 16.07, predate the probate code. To the extent any of those cases indicate that a presumption of undue influence would remain after the proponent provided sufficient evidence to meet his or her burden of producing evidence, the statute[36] overrules that notion.

At oral argument, the proponents' counsel asserted that he was unable to find any decision of this court sanctioning a jury instruction regarding a presumption of undue influence. The contestants did not cite to any such decision. And we are persuaded that sound reasons dictate against using the language of presumption in charging the jury in a will contest.

Where an appellate court reviews a bench trial or a ruling granting a directed verdict, it makes little difference whether the court speaks of a presumption or a permissible or probable inference. As we said in *In re Estate of Hedke*, one does not exert undue influence in a crowd.[37] It is usually surrounded by all possible secrecy; it is usually difficult to prove by direct evidence; and it rests largely on inferences drawn from facts and circumstances surrounding the testator's life, character, and mental condition. In determining whether undue influence existed, a court must also consider whether the evidence

---

[35] *Id.* at 493, 279 N.W. at 189.

[36] See § 30-2431.

[37] *In re Estate of Hedke, supra* note 15.

shows that a person inclined to exert improper control over the testator had the opportunity to do so.[38] It was in that context that we referred to a presumption of undue influence arising from a contestant's evidence of a confidential or fiduciary relationship, coupled with other suspicious circumstances. And where a court is considering whether the evidence was sufficient to sustain a contestant's burden of producing evidence, or whether the burden of going forward with evidence has shifted to a proponent, it may be that using the terminology of presumption causes no harm.

But where a contestant has met the burden of going forward and a proponent has met the burden of producing contrary evidence in response, the language of presumption becomes unimportant and potentially misleading. An instruction that a "presumption" of undue influence exists would conflict with the statutory burden of persuasion that must be satisfied by the contestant. And it could easily be seen by a jury as placing the judge's imprimatur on the contestant's claim.

We reaffirm our prior holding from *McGowan v. McGowan*,[39] and declare that the concept referred to as a "presumption of undue influence" in will contests is not a true presumption. We discourage continued use of this terminology, particularly in a matter tried to a jury.

[13,14] A trial court should focus instead on the evidence presented. If a contestant's evidence shows a confidential or fiduciary relationship, coupled with other suspicious circumstances, the contestant has introduced evidence sufficient to justify an inference of undue influence.[40] In other words, that evidence is sufficient to sustain the contestant's prima facie case of undue influence. The inference of undue influence may be rebutted by proof that the testator had competent

---

[38] *Id.*

[39] *McGowan v. McGowan, supra* note 20.

[40] See *In re Estate of Novak, supra* note 23.

independent advice and that the will was his or her own vol-
untary act.[41] Throughout the proceeding, the statute places the
ultimate burden of persuasion on the contestant.

[15] And a "tie" is not enough to sustain a contestant's
burden of persuasion. The party seeking to establish such
influence has not met his or her burden of proof if all of the
evidence is circumstantial and the inferences to be drawn
therefrom are equally consistent with the hypothesis that undue
influence was not exercised and the hypothesis that such influ-
ence was exercised.[42]

[16] The district court did not err in refusing the contestants'
proposed instructions, because there is no true presumption of
undue influence where both the contestant and the proponent
have met their respective burdens of production of evidence.
The contestants did not assign error to the court's submission
of the factual issue to the jury. Rather, they argue that the jury
should have been instructed in the language of presumption.
We disagree. To establish reversible error from a court's fail-
ure to give a requested jury instruction, an appellant has the
burden to show that (1) the tendered instruction is a correct
statement of the law, (2) the tendered instruction was warranted
by the evidence, and (3) the appellant was prejudiced by the
court's failure to give the requested instruction.[43] At the time
of submission of the issue to the jury, the court had determined
that each side had produced sufficient evidence, if believed,
to sustain its respective burden of going forward. Because the
contestants' proposed instructions referred to a "presumption of
undue influence" and at that stage, there was no such presump-
tion, their tendered instructions were not a correct statement of
the law and could mislead the jury.

[17] The jury instructions as a whole correctly charged
the jury regarding undue influence. Jury instructions do not

---

[41] *Id.*

[42] See *Goff v. Weeks, supra* note 17.

[43] *Hike v. State, supra* note 8.

constitute prejudicial error if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence.[44] In instructing the jury as to direct and circumstantial evidence, the district court informed the jury that "[c]ircumstantial evidence is evidence of one or more facts from which another fact can logically be inferred" and that "[a] fact may be proved by either direct evidence or circumstantial evidence or both." As part of the instruction on the burden of proof, the court advised the jury that "[w]here two inferences may be drawn from the facts proved, which inferences are opposed to each other but are equally consistent with the facts proved, a party having the burden of proof on an issue may not meet that burden by relying solely on the inference favoring that party." And with regard to undue influence, the court provided the jury with the correct definition and with the correct elements that the contestants had the ultimate burden to prove. The court did not err in instructing the jury.

Our opinion should not be interpreted to mean that it would never be appropriate to include an instruction regarding a permissible inference in a will contest involving undue influence. But no such instruction was requested in this case, and we decline to expound on a hypothetical situation.

Although our reasoning differs somewhat from that of the Court of Appeals, we affirm its determination that the district court did not err in refusing to give the contestants' tendered jury instructions.

### (b) Jury Question on
### Burden of Proof

The contestants also argue that the district court erred by refusing to further instruct the jury on the burden of proof. During deliberation, the jury asked the court to explain the difference between "[g]reater weight of the evidence" and

---

[44] *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013).

"shadow of doubt." The court merely referred the jury to instruction No. 7, which defined the burden of proof primarily using the pattern instruction.[45]

[18] The Court of Appeals determined that this instruction was a correct statement of the law. On further review, the contestants do not quarrel with this assessment. And the general rule is that whenever applicable, the Nebraska Jury Instructions are to be used.[46]

The contestants do not dispute that the district court's action is reviewed for abuse of discretion. They argue that the jury's question showed its confusion with regard to the meaning of the instruction and that the court should have "responded with a simple 'no' or with some explanation of the difference between civil and criminal burdens of proof."[47]

[19] The trial judge is in the best position to sense whether the jury is able to proceed with its deliberations and has considerable discretion in determining how to respond to communications indicating that the jury is experiencing confusion.[48] None of the instructions referred to "shadow of doubt." By directing the jury back to the correct burden of proof, the district court declined to inject law that did not pertain to the case. And the Court of Appeals correctly held that in so doing, the district court did not abuse its discretion.

## 2. Video

The district court received into evidence the video of Mary Ann's execution of her 2001 will but instructed the jury to disregard the specific questions asked by Mary Ann's attorney regarding influence and whether Calvin influenced Mary Ann. The court further instructed the jury that those questions and answers could not be considered as evidence on the

---

[45] See NJI2d 2.12A (defining "greater weight of the evidence").

[46] *Shipler v. General Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807 (2006).

[47] Brief for appellants on petition for further review at 50.

[48] See *U.S. v. Parker*, 903 F.2d 91 (2d Cir. 1990).

issue of undue influence. The jury viewed the video during the trial, and the video was sent into the jury room during deliberation.

### (a) Admission of Video

The contestants argue that the video should not have been admitted into evidence for three reasons. First, they contend that it was inadmissible hearsay. Second, they argue that the district court abused its discretion in failing to exclude the video under § 27-403, which, they claim, provided two bases for its exclusion: that the video's probative value was substantially outweighed by the danger of unfair prejudice and that it was cumulative. Finally, they argue that admission of the video violated their right of cross-examination.

### *(i) Hearsay*

We find no merit to the contestants' hearsay objection. The district court excluded the questions and answers regarding undue influence. As a result, the video's content largely fell outside the definition of hearsay.[49] Proof of Mary Ann's conduct, demeanor, and statements not admitted for the truth of what she said, was not hearsay. And contrary to the contestants' argument, the "state of mind" exception applied to her statements regarding her intentions for the disposition of her property.[50] Because the portions of the video admitted by the district court communicated Mary Ann's state of mind at the time, the Court of Appeals correctly rejected the contestants' hearsay argument.

---

[49] Neb. Evid. R. 801(3), Neb. Rev. Stat. § 27-801(3) (Reissue 2008) (hearsay is statement, other than one made by declarant while testifying at trial or hearing, offered in evidence to prove truth of matter asserted).

[50] § 27-803(2) (excluding from hearsay rule "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition . . . , but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will").

*(ii) § 27-403*

We agree with the Court of Appeals that the district court did not abuse its discretion under § 27-403.[51] The contestants raise the same two arguments here.

[20] In an effort to establish unfair prejudice, the contestants argue that the district court could not "'unring the bell'" regarding the questions and Mary Ann's answers on undue influence.[52] But the court directed the jury to disregard those questions and answers. It is presumed a jury followed the instructions given in arriving at its verdict, and unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded.[53] The contestants have failed to point to anything in the record showing that the instructions were disregarded. They also argue that Mary Ann's attorney's questions were leading, but they fail to explain how the questions were unfairly prejudicial.

The contestants also argue that the video was cumulative. At the time the video was offered into evidence, the 2001 will had already been received into evidence and Mary Ann's attorney at the time of its execution had testified regarding her testamentary capacity and reasoning. We digress to observe that the admission of a video recording showing the execution of a will is not novel in Nebraska[54] or elsewhere.[55]

---

[51] § 27-403 ("evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence").

[52] Brief for appellants on petition for further review at 47.

[53] *Kvamme v. State Farm Mut. Auto. Ins. Co.*, 267 Neb. 703, 677 N.W.2d 122 (2004).

[54] See *In re Estate of Peterson*, 232 Neb. 105, 439 N.W.2d 516 (1989).

[55] See, e.g., *Patterson-Fowlkes v. Chancey*, 291 Ga. 601, 732 S.E.2d 252 (2012); *Corley v. Munro*, 631 So. 2d 708 (La. App. 1994); *Geduldig v. Posner*, 129 Md. App. 490, 743 A.2d 247 (1999); *Matter of Burack*, 201 A.D.2d 561, 607 N.Y.S.2d 711 (1994); *Matter of Estate of Seegers*, 733 P.2d 418 (Okla. App. 1986).

[21] Although the action focused on the 2011 will, the proponents offered evidence of the 2001 will in order to establish a consistent estate plan. We have stated that a prior will, executed when the testator's testamentary or mental capacity was and is unquestioned, and as to which the existence of undue influence is not charged, and which conforms substantially as to the results produced to the instrument contested, may be considered as competent evidence for the purpose of refuting charges of undue influence or want of testamentary or mental capacity by showing that the testator had a constant and abiding scheme for the distribution of his property.[56] Here, both the 2001 will and the 2011 will left the entire farm to Calvin. If the contestants were not challenging the validity of the 2001 will, their argument regarding the cumulative nature of the video might have merit. But when the video was offered and received, both wills were under attack based upon lack of testamentary capacity and undue influence. As the Court of Appeals observed, "the jury had not observed nor heard, firsthand, from Mary Ann."[57] The video provided the jury with a direct opportunity to assess Mary Ann's testamentary capacity. And after the directed verdict on testamentary capacity, the record shows no attempt to have the video stricken.

### (iii) Cross-Examination

[22] Finally, the contestants argue that they had no opportunity to cross-examine Mary Ann. This is a civil case, and the Sixth Amendment right to confront witnesses and its Nebraska equivalent do not apply.[58] But the contestants appear to assert a broad entitlement to cross-examination rather than a constitutional right. The principles underlying

---

[56] See *In re Estate of Flider*, 213 Neb. 153, 328 N.W.2d 197 (1982).

[57] *In re Estate of Clinger, supra* note 1, 22 Neb. App. at 703, 860 N.W.2d at 209.

[58] See *Walsh v. State*, 276 Neb. 1034, 759 N.W.2d 100 (2009).

the right to confront witnesses as part of the factfinding process are also applicable in civil cases. We recognize that Nebraska's evidentiary rules contemplate cross-examination of witnesses in all cases.[59]

[23,24] Closely related to the right of confrontation or cross-examination is the hearsay rule. "[I]t may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values . . . ."[60] The idea behind both concepts is that the witness should be made available at trial so that he or she may be subjected to cross-examination under oath. When a witness is unavailable for cross-examination, his or her statements are admissible only if they bear adequate indicia of reliability.[61] Hearsay that falls within a firmly rooted hearsay exception is presumptively reliable and trustworthy.[62] We recognize that this principle cannot be applied in a criminal case, because it would violate the current understanding of the Confrontation Clause.[63] But the principle remains valid in the context of a civil case.

Here, there was no infringement of the contestants' broad right to cross-examination. The contestants were able to cross-examine the individual who supervised the 2001 will execution—and who was the person responsible for making and preserving the video. And while neither the video itself nor Mary Ann could be cross-examined at trial, our rules of evidence recognize such impossibilities and provide numerous

---

[59] See Neb. Evid. R. 611, Neb. Rev. Stat. § 27-611 (Reissue 2008).

[60] *California v. Green*, 399 U.S. 149, 155, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970).

[61] *State v. Sheets*, 260 Neb. 325, 618 N.W.2d 117 (2000), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007), citing *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), *overruled, Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[62] See *State v. Sheets, supra* note 61.

[63] See *Crawford v. Washington, supra* note 61.

exceptions to the hearsay rule.[64] As we determined above, the video's content was admissible because it either was not hearsay or fell within an exception to the hearsay rule. To the extent it fell within a firmly rooted hearsay exception, there was sufficient indicia of reliability such that the contestants' right to cross-examination was not violated.

### (b) Use of Video in
### Jury Deliberations

Finally, the contestants argue that the Court of Appeals erred in affirming the district court's decision to allow the jury access to the video during its deliberations. The Court of Appeals ultimately founded its decision on our opinion in *State v. Vandever*.[65]

In *Vandever*, we interpreted the meaning of the word "testimony" used in the statute[66] permitting a court to allow a jury to rehear testimony during deliberation. We determined that it encompassed evidence authorized as "testimony" under another statute,[67] which enumerated the four modes of taking the "testimony of witnesses."[68] Thus, we held that a jury's request to rehear an 8-minute investigator interview recording was not a request relating to "testimony" as used in the first statute.

But the Court of Appeals first acknowledged that there was no indication in the record that the jury had the necessary equipment to replay the video and that the record did not show that the contestants ever objected to the delivery of the video to the jury room with the other exhibits. Neither the

---

[64] See § 27-803 and Neb. Evid. R. 804, Neb. Rev. Stat. § 27-804 (Reissue 2008).

[65] *State v. Vandever, supra* note 5.

[66] See Neb. Rev. Stat. § 25-1116 (Reissue 2008).

[67] Neb. Rev. Stat. § 25-1240 (Reissue 2008).

[68] *Id.* (affidavit, deposition, oral examination, and "videotape of an examination conducted prior to the time of trial for use at trial in accordance with procedures provided by law").

contestants nor the proponents dispute the state of the record. Thus, the record does not establish either that the contestants objected or that the jury replayed the video.

[25-27] Two principles of appellate review preclude us from reaching this assignment. We have often stated that a litigant's failure to make a timely objection waives the right to assert prejudicial error on appeal.[69] And an equally fundamental principle is that error without prejudice provides no ground for relief on appeal.[70] On the state of the record, we cannot reach this issue without indulging in pure speculation beyond the record. Upon further review from a judgment of the Nebraska Court of Appeals, the Nebraska Supreme Court will not reverse a judgment which it deems to be correct simply because its reasoning differs from that employed by the Court of Appeals.[71]

## VI. CONCLUSION

On further review, we conclude that the Court of Appeals did not err in affirming the district court's
- refusal of the contestants' proposed instructions regarding a "presumption of undue influence";
- refusal, in response to a jury question, to further instruct the jury regarding the burden of proof; and
- admission into evidence of the video of the 2001 will execution subject to an instruction to disregard a portion of the exhibit.

We also determine that the contestants did not preserve an objection to, or show prejudicial error from, the district court's decision to allow the jury access to the video during its deliberations. We therefore affirm the decision of the Court of Appeals.

AFFIRMED.

---

[69] *In re Estate of Odenreider*, 286 Neb. 480, 837 N.W.2d 756 (2013).

[70] See *Brothers v. Kimball Cty. Hosp.*, 289 Neb. 879, 857 N.W.2d 789 (2015).

[71] *Id.*