LYNN HOFF, APPELLEE, V.
VICTOR AJLOUNY, APPELLANT.
703 N.W.2d 645

Filed September 20, 2005.   No. A-04-204.

Scott A. Lautenbaugh, of Nolan, Olson, Hansen & Lautenbaugh, L.L.P., for appellant.

Kristopher J. Covi, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellee.

IRWIN, SIEVERS, and CASSEL, Judges.

SIEVERS, Judge.

This appeal presents the question of whether a homeowner must remove the new asphalt shingle roof on his home and

replace it with a wood shake shingle roof, which is the required roofing under the subdivision's covenants. The district court found that he must—and we agree.

## I. FACTUAL BACKGROUND

After our review of the record, we find that the following recitation of pertinent facts from the Douglas County District Court's order dated January 13, 2004, is concise and accurate, and therefore we quote it at length for the sake of judicial economy:

> Plaintiff Lynn Hoff ("Hoff") is the owner of Windridge Estates Lot 134, 1412 North 158th Avenue, Omaha, Nebraska. . . . Defendant Victor Ajlouny ("Ajlouny") owns Windridge Estates Lot 42, 1553 North 158th Avenue, Omaha, Nebraska. . . . All lots in Windridge Estates are subject to certain Protective Covenants recorded in the office of the Register of Deeds of Douglas County on September 12, 1984. . . . Paragraph Seven of these Protective Covenants provides as follows: "Roofs. All houses shall have wood shake shingle roofs." . . .
>
> On or about January 2002, Ajlouny replaced the wood shake shingle roof on his residence with an asphalt roof. . . . Hoff became aware of the installation of the asphalt roof approximately two to three days after the roof was completed. . . . Hoff sent letters to Ajlouny regarding the covenant violation dated January 11, 2002, February 11, 2002, and March 18, 2002. . . . Hoff also spoke with Ajlouny between January and March regarding the roof. . . . Ajlouny refused to bring his residence into compliance with the Covenants.

## II. PROCEDURAL BACKGROUND

Lynn Hoff filed her petition on October 9, 2002, and her amended petition on October 15. In her amended petition, Hoff alleges that Victor Ajlouny's residence is subject to certain protective covenants (Protective Covenants) recorded in the office of the register of deeds of Douglas County, that such covenants provide " '[a]ll houses shall have wood shake shingle roofs,' " and that the asphalt roof installed at Ajlouny's residence violates the covenants. Hoff further alleges that Ajlouny refuses to bring his

residence into compliance with the covenants, despite demand from the homeowners' association, and that such refusal to comply has caused damage to the owners of homes in the Windridge Estates subdivision. Hoff requested an order of mandatory injunction directing Ajlouny to replace the roof with a wood shake shingle roof.

Ajlouny filed his answer on February 6, 2003. Ajlouny admitted that the current roof on his residence is not a wood shake shingle roof. Ajlouny set forth three affirmative defenses: (1) The alleged covenants are void as against public policy, (2) Hoff waived the covenant by failing to enforce it in a timely manner, and (3) the burden sought to be imposed by Hoff upon Ajlouny is much greater than any alleged damages flowing from the alleged violation of the covenant in question. Ajlouny requested that the court dismiss Hoff's amended petition with prejudice. We note that Ajlouny's first and third affirmative defenses are not before us on this appeal; he assigns error only with respect to the district court's failure to adopt his defense of waiver.

On June 2, 2003, Hoff filed a motion for summary judgment alleging that there was no genuine issue of material fact with respect to her claim. In support of her motion, Hoff submitted the affidavit of Kristopher Covi, Hoff's attorney.

A hearing on Hoff's motion for summary judgment was held on October 20, 2003. The court filed its order on January 13, 2004. The order granted summary judgment in favor of Hoff. The order also enjoined Ajlouny from violating paragraph 7 of Windridge Estates' Protective Covenants recorded in the office of the register of deeds of Douglas County on September 12, 1984, and directed Ajlouny to replace his asphalt roof with a wood shake shingle roof. Ajlouny now appeals.

### III. ASSIGNMENTS OF ERROR

Ajlouny alleges that the district court erred in (1) admitting the affidavit of Covi into evidence with the Protective Covenants attached, when proper foundation had not been laid and the copy did not meet the requirements of the public record hearsay exception, and (2) failing to utilize the appropriate criteria and standard for waiver of the right to seek an injunction regarding restrictive covenants.

## IV. STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Whipps Land & Cattle Co. v. Level 3 Communications*, 265 Neb. 472, 658 N.W.2d 258 (2003). Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Zannini v. Ameritrade Holding Corp.*, 266 Neb. 492, 667 N.W.2d 222 (2003).

An action for injunction sounds in equity. *Whipps Land & Cattle Co. v. Level 3 Communications, supra.* On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent from the conclusion reached by the trial court. *Poppleton v. Village Realty Co.*, 248 Neb. 353, 535 N.W.2d 400 (1995). (*Poppleton* was a summary judgment case regarding an equity matter. The plaintiffs had summary judgment ruled against them when the district court refused to grant them quiet title of real estate. The Nebraska Supreme Court began its factual analysis by stating: "Viewing the evidence in a light most favorable to the [plaintiffs] and giving them the benefit of all reasonable inferences deducible from the evidence, the facts of this case are as follows[.]" *Id.* at 356, 535 N.W.2d at 402.) Therefore, we will use the same standards in the instant case, and we, too, will view the evidence in a light most favorable to Ajlouny and give him the benefit of all reasonable inferences deducible from the evidence.

## V. ANALYSIS

### 1. AFFIDAVIT OF COVI

Ajlouny argues that the district court erred in admitting Covi's affidavit into evidence with the attachment of the Protective Covenants, when proper foundation had not been laid and the copy of the covenant did not meet the requirements of the public

record hearsay exception. Ajlouny's argument relies on Neb. Rev. Stat. § 76-235 (Reissue 2003), which states:

> *Every deed acknowledged or proved, and certified by any of the officers* named in sections 76-217, 76-219, 76-220, 76-226 and 76-227, *and authorized to take acknowledgments*, including the certificate specified in section 76-242, whenever such certificate is required by law, *may be read in evidence without further proof*, and shall be entitled to be recorded. The record of a deed duly recorded, or a transcript thereof duly certified, may also be read in evidence with the like force and effect as the original deed, whenever by the party's oath or otherwise the original is known to be lost, or not belonging to the party wishing to use the same, nor within his control. Neither the certificate of the acknowledgment or the proof of any deed, nor the record or transcript of the record of such deed, shall be conclusive, but may be rebutted, and the force and effect thereof may be contested by any party affected thereby. *If the party contesting the proof of a deed shall make it appear that such proof was taken upon the oath of an interested or incompetent witness, neither such deed nor the record thereof shall be received in evidence until established by other competent proof.*

(Emphasis supplied.)

Ajlouny argues that in Covi's affidavit, Covi "makes no mention of how or why he knows [the Protective Covenants] are correct, nor that he is employed or has capacity as an officer pursuant to . . . § 76-235 to testify to the fact that the Protective Covenants attached are the same as held by the Register of Deeds Office." Brief for appellant at 7. Ajlouny also argues that "[i]n Covi's affidavit, he attests to the fact that he is the attorney for [Hoff], making him an interested person," and "[t]hus, a third party was required to lay foundation for the admission of the Protective Covenants, and to swear and certify to their accuracy when compared with the Original Protective Covenants." *Id.* However, Ajlouny's reliance on § 76-235 is misplaced because the statute deals with real property conveyances, and the covenant at issue clearly does not convey real property.

■ The correct statutes for analysis are Neb. Rev. Stat. §§ 25-1334 and 27-1005 (Reissue 1995). Section 25-1334 states in part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

And, § 27-1005, regarding the Nebraska rules of evidence, states:

The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with section 27-902 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given.

In his affidavit, Covi stated that he had personal knowledge of the facts set forth in his affidavit and stated that exhibit B attached to his affidavit was "a true and correct copy of the 'Protective Covenants' recorded at Book 718 Page 382 of the Miscellaneous Records of Douglas County on September 12, 1984 as compared to the original." Thus, the requirements of §§ 25-1334 and 27-1005 have been satisfied, and the affidavit and its attachment were properly admitted.

## 2. PRIMA FACIE CASE AND DEFENSE OF WAIVER

### (a) Prima Facie Case

Paragraph 7 of the Protective Covenants for Lots 1 through 154 of the Windridge Estates subdivision states: "<u>Roofs</u>. All houses shall have wood shake shingle roofs." In his answer, Ajlouny admitted the allegations in paragraph 6 of Hoff's amended petition, which said, "On or about January, 2002 [Ajlouny] replaced the wood shake shingle roof on the Residence with an asphalt roof." Thus, the violation of the subdivision's covenants is established as a matter of law. Therefore, Hoff has

established a prima facie case and is entitled to summary judgment, unless Ajlouny establishes a genuine issue of material fact as to the defense of waiver—the only defense at issue on appeal.

### (b) Waiver

Ajlouny argues that the district court erred by not using the appropriate criteria and standard for determining whether there has been a waiver of the right to obtain an injunction regarding restrictive covenants. In support of his argument, Ajlouny cites *Pool v. Denbeck*, 196 Neb. 27, 33-34, 241 N.W.2d 503, 507 (1976), which sets out six criteria for judging whether there has been a waiver of a restrictive covenant:

> Whether there has been such a waiver or acquiescence depends upon the circumstances of each case. The criteria for determining this include[:] whether those seeking to enforce the covenants had notice of the violation and the period of time in which no action was taken; the extent and kind of violation; the proximity of the violations to those who complain of them; any affirmative approval of the same; whether such violations are temporary or permanent in nature; and the amount of investment involved.

However, the foregoing from *Pool v. Denbeck, supra*, must be read in light of the facts of that case which make it readily distinguishable from the instant case. In *Pool*, there were already other covenant violations in the subdivision, and the question was whether, because of the acquiescence of the subdivision's residents to those violations, the residents had waived their right to enforce the restrictive covenants against the new violation at issue in the lawsuit. However, in the case before us, Ajlouny introduced no evidence of any other covenant violation in the Windridge Estates subdivision, which evidence in our view is a predicate to the use of the six-criteria test for waiver under *Pool*. Of necessity, without a prior violation of a covenant, which has been tolerated by those with standing to enforce the covenant, there is no basis upon which to find a waiver.

In so concluding, we are not unmindful of the consideration set forth in the criteria from *Pool v. Denbeck, supra*: "the period of time in which no action was taken." However, even without

proof of a prior violation, we believe that the "passage of time" could be a possible defense, for example, if Ajlouny alleged that Hoff waited 3 years after he installed his asphalt shingle roof to complain or seek relief. However, that situation would fall under the rubric of laches or equitable estoppel. See *Fritsch v. Hilton Land & Cattle Co.*, 245 Neb. 469, 481, 513 N.W.2d 534, 543 (1994) ("the defense of laches is not favored in Nebraska. It will be sustained only if a litigant has been guilty of inexcusable neglect in enforcing a right to the prejudice of his adversary"). Equitable estoppel is said to occur "[w]hen a person, knowing her rights, takes no steps to enforce those rights until the adverse party has, in good faith, changed his position such that he could not be restored to his former state if the rights are enforced, [and] the delay becomes inequitable . . . ." *Welch v. Welch*, 246 Neb. 435, 449, 519 N.W.2d 262, 272 (1994). Neither laches nor equitable estoppel was raised as a defense, and thus no issue of delay by Hoff is before us. In conclusion, as a matter of law, the enforceability of the covenant at issue has not been waived.

### (c) Ajlouny's Knowledge of Covenant
While Ajlouny does not specifically assign such as error on appeal, his brief argues that he was unaware that a restrictive covenant was placed on the property, because the prior owners of his residence did not disclose the existence of a homeowners' association or covenants. While we are not required to address such argument, because it was not specifically assigned, we do so only for the sake of completeness.

Neb. Rev. Stat. § 76-238 (Reissue 2003) states in part:

> All deeds, mortgages, and other instruments of writing which are required to be or which under the laws of this state may be recorded, shall take effect and be in force from and after the time of delivering [such instruments] to the register of deeds for recording, and not before, as to all creditors and subsequent purchasers in good faith without notice.

Thus, Ajlouny had record notice of such covenant, and such covenant was binding. The asphalt roof clearly violates the subdivision restrictions, and an injunction is the proper remedy.

## VI. CONCLUSION

Therefore, we find that the district court properly awarded summary judgment in favor of Hoff because there was no genuine issue of material fact. We further find that the district court properly enjoined Ajlouny from violating paragraph 7 of Windridge Estates' Protective Covenants recorded in the office of the register of deeds of Douglas County on September 12, 1984, and properly directed Ajlouny to replace his asphalt roof with a wood shake shingle roof.

AFFIRMED.